## MOUNTAIN STATES TELEPHONE & TELEGRAPH CO. v. PUBLIC SERVICE COMMISSION et al.

No. 6724. Decided January 9, 1945. (155 P. 2d 184.)

Rehearing denied, May 24, 1945.

See 16 C. J. S. Constitutional Law, Sec. 98. 50 Am. Jur. 210.

For opinion on rehearing see 107 Utah 530, 158 P. 2d 935.

*W. Q. Van Cott,* of Salt Lake City (*Brock, Akolt & Campbell,* of Denver, Colo., of counsel), for plaintiff.

*Clinton D. Vernon,* of Salt Lake City, for defendants.

McDONOUGH, Justice.

This case arises out of *Mountain States Telephone & Telegraph Co.* v. *Public Service Commission,* 105 Utah 230, 142 P. 2d 873, rehearing denied 105 Utah 266, 145 P. 2d 790, wherein this court reviewed by certiorari an order of the commission reducing toll rates charged by the utility for intrastate service. We set aside the order of the commission and remanded the case to it.

At the time the petition for certiorari was filed, the utility also filed a petition for stay of the commission's order. This court ordered that upon filing of a suspension bond by the utility, the commission's order be stayed. It was also ordered that the utility make monthly payments into a joint account in the names of the utility and the commission, in a local bank, of all sums collected in excess of the amounts which the ratepayers would have been

required to pay if the order of the commission had not been stayed. This fund was impounded "until final decision in this case." When this court set aside the commission's order and denied the petition for rehearing, the utility discontinued making payments into the fund impounded and requested the commission to allow withdrawal of the money. The commission refused, and the utility filed a petition for writ of mandate to compel the commission to allow the company to obtain the impounded fund. The issues raised by such petition and the answer thereto, are here for decision.

The first argument of the utility is that "to be impounded until the final decision in this case" means until 105 Utah 230, 142 P. 2d 873 was finally decided by this court —which occurred with denial of the petition for rehearing. In answer the commission contends that this court merely set aside the commission's order and sent the case back to it for further consideration and proceedings; that any further hearing is merely a continuation of the original case. In others words, the commission's contention is that the phrase set out above should be read as "to be impounded until the final decision of this controversy." This involves an interpretation of Sec. 76-6-17, U. C. A. 1943.

We therefore address ourselves to its meaning, keeping in mind one of the cardinal rules of statutory construction, viz., that the interpretation must be based on the language used, and that the court has no power to rewrite a statute to make it conform to an intention not expressed.

"The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms. * * * If a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety and policy of its passage." 2 Lewis' Sutherland Statutory Construction (2nd Ed.) p. 701.

Section 76-6-17, supra, must, of course, be construed in its context. The provisions of the preceding section (76-6-16) are deemed relevant. The pertinent provisions of such sections (emphasis supplied by the writer) follow:

"76-6-16. Within thirty days after the application for a rehearing is denied, or, if the application is granted, within thirty days after the rendition of the decision on rehearing, the applicant or any party to the proceeding deeming himself aggrieved by such order or decision rendered upon rehearing may apply to the supreme court for a writ of certiorari for the purpose of having the *lawfulness of the original order* or decision, or the order or decision on rehearing, *inquired into and determined.* * * * The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the state of Utah. The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination. * * * Upon the hearing the supreme court shall enter judgment either affirming or setting aside the order or decision of the commission. * * * No court of this state (except the supreme court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission, or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties; *provided,* that the writ of mandamus shall lie from the supreme court to the commission in all proper cases." (Italics added.)

"76-6-17. (1) The pendency of a writ of review shall not of itself stay or suspend the operation of the order or decision of the commission, but *during the pendency of such writ* the supreme court in its discretion may stay or suspend, in whole or in part, the operation of the commission's order or decision.

"(2) No order so staying or suspending an order or decision of the commission shall be made by the supreme court otherwise than upon three days' notice and after hearing, and, if the order or decision of the commission is suspended, the order suspending the same shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner, and specifying the nature of the damage.

"(3) In case the order or decision of the commission is stayed or suspended, the order of the court shall not become effective until a suspending bond shall first have been executed and filed with and approved by the commission (or approved, on review, by the supreme court) payable to the state of Utah, and sufficient in amount and security to insure the prompt payment by the party petitioning for the review of all damages caused by the *delay in the enforcement of the order or decision of the commission, and of all moneys which any person or corporation may be compelled to pay, pending the review proceedings*, for transportation, transmission, product, commodity or service *in excess of the charges fixed by the order or decision of the commission, in case said order or decision is sustained*. The supreme court, in case it stays or suspends the order or decision of the commission in any matter affecting rates, fares, tolls, rentals, charges or classifications, shall also by order direct the public utility affected to pay into court from time to time, there to be impounded *until the final decision of the case*, or into some bank or trust company paying interest on deposits, under such conditions as the court may prescribe, all sums of money which it may collect from any person in excess of the sum such person would have been compelled to pay, if the order or decision of the commission had not been stayed or suspended.

"(4) In case the supreme court stays or suspends any order or decision lowering any rate, fare, toll, rental, charge or classification, the commission upon the execution and approval of such suspending bond shall forthwith require the public utility affected, *under penalty of the immediate enforcement of the order or decision* of the commission *pending the review* and nothwithstanding the suspending order, to keep such accounts, verified by oath, as may in the judgment of the commission suffice to show the amounts being charged or received by such public utility pending the review in excess of the charges allowed by the order or decision of the commission, together with the names and addresses of the persons to whom *overcharges will be refundable, in case* the charges made by the public utility *pending the review* are not sustained by the supreme court. The court may from time to time require such party petitioning for a review to give additional security or to increase the said suspending bond whenever in the opinion of the court the same may be necessary to insure the prompt payment of such damages and such overcharges. Upon the final decision by the supreme court all moneys which the public utility may have collected pending the appeal *in excess of those authorized by such final decision*, together with interest in case the court ordered the deposit of such moneys in a bank or trust company, shall be promptly paid to the persons entitled thereto in such manner and through such methods of distribution as may be prescribed by the commission. * * *" (Italics added.)

First to be noted in Sec. 76-6-16 is that it is the lawfulness of the order of the Commission which is to be "inquired into and determined." Upon determining that the order under review is or is not "lawful," within the meaning of such term as defined by the legislature, this court "shall enter judgment either affirming or setting aside" the order of the commission.

We shall advert hereinafter to this limitation of power, but at this point shall proceed to an examination of Sec. 76-6-17. This section has reference to a stay of the order or decision of the commission *during the pendency of the writ of review,* the conditions thereof and the disposition of a fund impounded in compliance with such conditions. The first condition imposed ·is the furnishing by the petitioner of a bond sufficient in amount to insure prompt payment by petitioner of

"all moneys which any person or corporation may be compelled to pay, pending the review proceedings, for  *  *  *  commodity or service in excess of the charges fixed by the order or decision of the commission, *in case such order or decision is sustained.*"

It is submitted that the meaning of such provision is plain; its intendment without doubt. Thereunder, it could not be successfully asserted that the surety on a bond drawn in the terms of the statute would be liable thereon in case the order or decision of the Commission were not sustained, but were set aside. For, it is only where the order or decision of the Commission is sustained that the surety undertakes to do anything.

The statute goes on to provide that the utility shall, as a condition of a stay, pay into court or into a bank under conditions to be prescribed by the court, all moneys collected from any person in excess of those prescribed by the order under review. Such money is ■ "to be impounded until the final decision of the case." Note that the provision just referred to relative to the impounding of the fund, is contained in the sentence next

to that specifying the amount and conditions of the bond required to be furnished as a prerequisite to a stay. The two sentences contain the conditions prescribed by the legislature as the prerequisites—whether but the minimum requirements or not we need not here determine—for the granting of a stay by this court. But, as pointed out hereinabove, the surety on the bond of the utility undertakes that said utility will make prompt payment of the excess to any person who, pending the review, pays an amount for service in excess of that fixed by the order of the Commission, *only in case the order or decision of the commission is sustained.* It seems reasonably clear that it was not the legislative intent that the fund paid into court by the utility might be distributed to rate payers should the order under review be set aside; but that the surety on the bond (conditioned on *payment to the rate payer* of amounts in excess of those provided by the Commission's order) be freed of liability in such circumstance.

The meaning of subsection (3) of 76-6-17, supra, it is submitted, is clear; the liability of the surety on the bond therein provided for and the payment to the rate payer out of moneys impounded is *conditioned* upon the order or decision of the Commission being by this court sustained.

Nor do the provisions of Sec. 76-6-17(4) becloud that meaning. Read in light of subsection (3), subsection (4) is free from ambiguity. It deals first with the duty imposed upon the utility to keep accounts showing the charges made by the utility for a service in question

"together with the names and addresses of the persons to whom *overcharges* will be refundable, in case the charges made by the public utility *pending* the review *are not sustained by the Supreme Court.*" (Emphasis added.)

The quoted provision presents difficulties to some members of the court. Viewed in light of the subject matter of Sec. 76-6-17 the staying of the order of the Commission pending review; and of subsection (3) any ambiguity is resolved.

It is urged by the Commission that this court did not sustain the charges made by the utility pending review; that we in fact held that such charges were discriminatory. This position misconceives the function of this court in reviewing an order of the Commission. We, of course, in rendering our decision, acted within the scope of our authority. Consequently, we determined merely that the Commission had not regularly pursued its authority. Everything else stated in our opinion was in response to contentions of the plaintiff relative to confiscatory rates, arbitrary action by the Commission in respects other than those by us sustained, etc. But because we in the rationale of the opinion found that such contentions should be overruled, it does not follow that we determined that the rates charged by the utility were unjust, unreasonable or confiscatory. We did not so determine simply because that is not our function. Indeed, it is not a judicial function. It is legislative and is to be exercised by the arm of the legislature—the Public Service Commission.

Having determined that the commission in certain respects had acted arbitrarily, though we likewise determined that in other respects it had correctly pursued its authority, we set its order aside. The sections of the statutes under examination were enacted together in the same bill, Senate Bill 46. See Laws of Utah 1917, p. 128. Obviously in adopting Sec. 76-6-17 the legislature was aware of the limited jurisdiction of this court in reviewing an order of the commission conferred by Sec. 76-6-16. Even if this were not conclusively presumed, absent some unequivocal evidence of the contrary in the legislation itself, nevertheless the sections in question would be ample evidence of that fact. The sections provide, in case of a stay, (1) for the impounding of a fund; (2) for keeping proper account of such fund and the source from which it accumulated; and (3) for the disposition of such fund in case (a) the decision of the commission is set aside or (b) the decision of the commission is sustained—the only two possible dispositions of the review by this court. Under sub-

section (3) of Sec. 76-6-17, as has been shown, the impounded money is to be returned to the ratepayers, in case, and only in case, the decision or order of the commission is sustained. So, under subsection (4) requiring that the names and addresses of persons to whom *overcharges* are to be refunded in case "the charges made by the public utility pending the review are not sustained by the supreme court," the legislature had in mind the two possible outcomes of the review proceedings. If the decision of the commission be sustained, then the charges made by the utility pending the review are not sustained by the supreme court. In such case we find that the rates fixed by the commission are the legal rates—rates promulgated by a valid order of the commission. Hence, the money impounded consists of *overcharges*. But should we set aside the order, hold it invalid, then the charges made by the utility pending review are by us sustained—not, indeed, as reasonable, just and non-discriminatory; since determination of whether they are or are not such is not our province; but simply as rates which, absent a valid order of the commission promulgating others, the utility was legally authorized to charge. They are not *overcharges* within the meaning of the statute. The same reasoning applies to the expression in the subsection referring to moneys collected "in excess of those authorized by such final decision."

If the foregoing analysis of the statute be valid, then any contention to the effect that the provision in subsection (3) of Sec. 76-6-17 that the money be "impounded until the final decision of the case," means that it be held until the final decision of the controversy must fail. It is clear to us beyond doubt that such words mean until the final decision of the supreme court. The words "final decision of the case" themselves mean, without any contextual modification, the case in the supreme court—that case or proceeding initiated by petition for a writ of review and concluded by decision of this court.

But the contention is made that this court did in fact

remand the case to the Commission "for a determination as to what would be a reasonable and just rate for intrastate toll service" and hence that the case is not concluded. The remand, however, was obviously merely formal. Ample authority exists in the Commission to determine reasonable rates. The authority comes from the legislature not from this court. It must be clear that we did not thus offhandedly assume authority which this court has consistently asserted was not by the legislature conferred upon it. Nor does the fact that by the provisions of Sec. 76-3-1, U. C. A. 1943, every unjust and unreasonable charge made by a utility for services is prohibited and made unlawful, confer authority upon this court to modify an order of the Commission or to uphold an order in part and set it aside in part. This for the reason that the determination of whether a rate or charge is unreasonable or unjust is placed by law in the Commission and not in the courts.

The Commission in an excellent and informative brief argue that this court, having granted a stay and having impounded a fund, has the authority by virtue of its equitable powers and a duty in the exercise of such powers to hold the fund intact until it be determined by the Commission what was a just and reasonable rate to be paid by the consumer and upon such determination order distribution of the fund in accordance therewith to the persons entitled thereto. Well reasoned cases are cited in support of its contention. But, these cases, so far as can be determined from the cases themselves, are from jurisdictions where legislative enactments have not hampered the court in so dealing with the fund. In some of them the power of the reviewing court on review are much greater than that conferred on this court. An example is the case of *United States* v. *Morgan*, 307 U. S. 183, 59 S. Ct. 795, 83 L. Ed. 1211. That was a suit in the United States District Court for an injunction against the enforcement of an order of the Secretary of Agriculture reducing scheduled rates for services rendered at the Kansas City Stock Yard. As a condition to granting an interlocutory injunction the court

required that the marketing agencies pay into court the difference between the rates collected under the schedule and those prescribed by the order of the Secretary. Under the decision of the United States Supreme Court reversing the lower court which ordered the impounded fund turned over to the marketing agencies upon the order of the Secretary being set aside, it was in effect ordered that the trial court hold the fund and distribute it in the manner here contended for by respondent after the determination by the Secretary of a proper rate for the period during which the fund was collected. In such case it was under the equity power of the court that the fund was collected. The suit, itself, was a suit in equity, not a review of the order. Similar powers of review were involved in many of the cases cited.

But in the instant case the question of the disposition of the fund does not hinge alone upon the limited power of review of the order of the Commission. That which prevents us from holding the fund and subsequently distributing it as equity dictates, is the explicit mandate of the legislature, unless it be held that despite such mandate we may nevertheless exercise such jurisdiction. From the analysis heretofore made of the statute in question it seems clear that the legislative intent is: (1) That the fund be made up of the amounts collected by the utility, *pending the review,* in excess of those fixed by the order of the Commission under review; (2) that upon decision by this court setting aside or affirming the Commission, no further payments are to be made into the fund; (3) that the moneys impounded are to be paid to those entitled thereto, upon final decision by this court; (4) that such moneys are to be refunded to the rate payer only in case the order or decision of the Commission is affirmed; (5) that the utility has collected no "overcharge" if the order or decision of the Commission be set aside; (6) that if there be no "overcharge" there is no fund to distribute. If such be the legislative intent, then, since in the review proceed-

ings we set aside the order of the Commission, there is no fund upon which our equitable powers may operate.

Nor can there be any question that the legislature might specifically provide for disposition of the fund impounded under order of the court. It clearly might prescribe that rates fixed by the Commission be not effective until the period for applying for a writ of review shall expire; or, if petition for such writ be made, until final disposition thereof by this court. There seems no reason, therefore, why it might not likewise prescribe that a fund collected upon compliance with a condition prescribed for a stay be released to the utility in case the order of the commission be set aside.

From what has been said it follows that the fund in question is the property of the plaintiff, and it is the duty of the Commission to take the necessary steps to release it. Let the peremptory writ issue as prayed.

TURNER, J., concurs.

WOLFE, Justice (concurring).

Concurring in the opinion of Mr. Justice McDONOUGH: Quite against my inclinations I am compelled to concur in the opinion of Mr. Justice McDONOUGH. From a standpoint of justice I do not like the result but I see no escape from the analysis of the statute and conclusions arrived at by Mr. Justice McDONOUGH. The legislature has spoken by language which leads to the conclusion that when we set aside an order of the Commission we do sustain, within the meaning of Sec. 76-6-17, U. C. A. 1943, the charges made by the utility pending appeal. *We, of course, do not put our approval on such rates.* Only the Commission could do that. Certainly if we affirmed the Commission the excess rates charged pending appeal would not be sustained. Where we set aside the order of the Commission stating in the opinion that there is no competent evidence to support the rate fixed by that order we neither sustain nor fail to sustain (not sustain) the rate charged

by the utility during period of appeal in the sense that we disapprove or approve it. We never, by affirmance or vacation of the Commission's order, approve or disapprove of a rate order. We only determine whether it has been arrived at by a regular pursuit of the Commission's authority and whether there is evidence to sustain it. Thus the word "sustain" when used in reference to a rate fixed by the Commission must, in order to accord with the only action which the legislature has permitted to us in case we uphold the Commission, be equivalent to our permitted action of affirmance. And the words "not sustained" used in connection with the *old rate* still charged by the utility during pending of appeal are also equivalent to our affirming. If the rate fixed by the Commission's order is not affirmed then the old rate of the utility charged during the pending of the appeal is, so far as any action which we may take, "sustained." There is no middle ground. We cannot modify. We cannot remand with directions to fix a certain rate. We "set aside" which leaves the Commission free properly to find the rate level which *it* did not do before. In our opinion in the case of *Mountain States Telephone & Telegraph Co.* v. *Public Service Commission,* 105 Utah 230, 142 P. 2d 873, rehearing denied, 105 Utah 266, 145 P. 2d 790, we did not hold that the rates of Mountain States were, when considered by themselves, unjust or unreasonable. Nor did we hold that such rates would necessarily be reduced. The holding was that the existing differences between Mountain States' intrastate rates and the Long Lines interstate rates were, on the evidence adduced, unreasonable and unjustified. The question was expressly left open to whether it would finally be determined that the intrastate rates should be reduced, and if reduced, the extent of the reduction. On new evidence it is possible that the difference between intrastate rates and the Long Lines interstate rates will be found to be a reasonable difference, although the probabilities are certainly the other way. The possibility of such a finding was not foreclosed

by our holding. The fact that there is a great likelihood (in view of our conclusion that there was justification for the Commission's finding that there was unjust discrimination between the intrastate long distance rate and the long line rates), that the upper rate will be reduced to a level somewhere between the two rates, does not mean that we did or did not sustain the utility in its charges during the stay period. It only presents a likelihood that such rates will ultimately be different. They are meanwhile lawful and valid in the sense that there is no valid order fixing a new rate level.

What rather shocks our sense of justice is the result which may emerge when we follow the law as thus laid down. Because the fund cannot be retained until the commission finally determines what were the just and reasonable rates during the period of appeal, a strange result may ensue. Take for example the instant case: The utility has petitioned for a stay on the ground that the rates fixed by the Commission are less than the just, reasonable and sufficient rates and that if it must abide by the new rates pending appeal it will suffer losses which it can never recapture from the consumer if the Commission's order is set aside. On such showing a stay was granted and the utility paid the required amounts into the fund. It prevailed in the appeal because the Commission failed to fix the correct level of rates. The entire fund is now to be turned over to the utility. Later if the Commission fixes rates higher than Long Line rates but lower than the present rates being charged which are acceptable to the utility as just, reasonable and sufficient, or if appealed are affirmed by this court because supported by substantial evidence, and such rates so ultimately arrived at were the just and reasonable rates during the period pending the appeal, the utility has, because it obtained the privilege of a stay, emerged from the controversy not only without a loss but with a windfall by obtaining from the consumers a rate during the appeal period higher than what was

during said period a just and reasonable rate. The rule ought to be—

"Render unto the utility what belongs to the utility and unto the consumer what belongs to the consumer."

I had thought that we could avoid this result by holding the fund intact until the Commission found what should have been the just and reasonable rates during the period of appeal on the theory that a fund having come into being as a condition of our granting a stay, its distribution should be governed by the application of equitable principles as was done on the case of *United States* v. *Morgan*, 307 U. S. 183, 59 S. Ct. 795, 83 L. Ed. 1211. But my difficulty with this is that here the fund has been created by reason of a mandate of the legislature (although we could have required as part of our ordinary equitable power in case of appeal as a condition of granting the certiorari had no such mandate been prescribed by the legislature that such payments be made by the utility) and there are strict directions from the legislature as to how the fund is to be distributed in case we affirm and again in case we set aside the order of the Commission. We cannot disobey such instructions. The remedy lies with the legislature. It is easy for us where our inclinations and sense of social progress or justice accord with the mandates of the legislature to refrain from interfering, under the guise of interpretation, with legislative directions. It is more difficult to stay in the circle of our own province when we think that the results of following legislative directions are socially untoward or reach what appears to us to be an unjust result. True, if there were room for differences of interpretation, we should then follow that interpretation which accords with what appears to us to be the practical, sensible or socially just result. As appears in the case of *Johanson* v. *Cudahy Packing Company,* 107 Utah 114, 152 P. 2d 98, there are cases where reasonable minds may differ as to the point where interpretation stops and judicial legislation begins. In those cases where a judge may conscientiously conclude

that he is exercising his function of interpretation his opinion will attempt to reach, through interpretation, that result which accords with workability, practicality, commons sense and justice. But where he does not think that reasonable minds could differ, as on the question of whether what we are asked to do is really legislation, it is his duty to stay within the province of the judiciary and restrain from invading the province of the legislature despite his personal longings for a different result. In this case, as in the case of the *Peerless Sales Company et al.* v. *Industrial Com'n of Utah et al.*, 107 Utah 419, 154 P. 2d 644, I am constrained by the principles herein above announced to hold contrary to a result I would like to reach. In other cases from time to time I have denounced what I considered a judicial invasion on our part into jury, legislative or administrative agency fields because I thought the majority were unwittingly permitting their social views or mind conditioning or a desire for what seemed a better or correct result, to lead them into fields of decision reserved by the constitution or the laws to other agencies of social control. I am now simply taking a dose of the medicine which I have heretofore prescribed for others.

LARSON, Chief Justice (dissenting).

I dissent. Since the majority of the court have construed and interpreted the section of the statute involved in this case, which construction will henceforth be binding upon everyone; and since another case like this will probably never arise under the section as now written and construed, little purpose would be served by writing a dissenting opinion were it not for the fact that all seem agreed that the legislature should rewrite, amend or clarify the section. That the commission, utilities, legislature, bar, and others interested therein may better understand the difficulties of the problems presented by the section, I deem it advisable to show why I cannot concur in the views of the majority, and what I deem the error in the prevailing opinion.

I admit I do not see the relevancy of what is said about the liability of a surety on an undertaking. We are here not concerned with any surety or liability on a bond. The bond would merely go to the condition that the company would pay the money into the fund, which then is subject to the control of the court or the commission. That was done here. We have the fund, and are here concerned only with the question as to whether at this time the company is entitled to the whole of the fund by writ of mandate. We should not confuse the furnishing of bond to stay the commission's order, which may have other results than the creation of a fund, or result in damages other than the impounding of the fund, with the problem as to whether the company is now entitled to the whole of the fund.

As to the meat of the controversy, it is the position of the prevailing opinion, as I read it, that our former decisions, 105 Utah 230, 142 P. 2d 873, 882, and 105 Utah 266, 145 P. 2d 790, 791, decided merely that the order of the commission should be set aside. In the first opinion we said:

"The Commission having correctly held that the evidence prima facie showed unlawful discrimination, the burden was on Mountain States to justify the differentials."

We then declare that the company failed to justify, and then we say:

"Hence the Commission was not arbitrary in assuming the present differences were unreasonable."

And again,

"The burden is on Mountain States to overcome the effect of the showing that its present rates are unjust."

The order made in that opinion reads:

"The matter [is] remanded to the Commission for a determination as to what would be a reasonable and just rate for intrastate toll service."

In the opinion (last citation above) on petition for rehearing, from which opinion the writer dissented, the court said: .

"The Commission concluded from the evidence adduced that the existing differences were unwarranted and discriminatory. We held that there was ample evidence to support this finding."

Again:

"The difficulty with the position taken by the Commission is that under the evidence it clearly appears that the order *went beyond merely eliminating* the discrimination. * * * Hence the relationship of Mountain States intrastate rates to Long Lines rates does not under the evidence submitted justify *the full reduction made*. Other than this relationship between the two schedules there is no evidence to justify any reduction in intrastate rates for there is no contention that existing rates are inherently unreasonable. This relationship *does not*, under the evidence, *justify the reduction to the level of Long Lines rates. But the evidence does show that the existing intrastate rates are somewhat higher than this relationship with Long Lines rates would justify*. Thus there is no evidence in the record *to justify the extent of the reduction* made." (Italics added.)

It is not contended that we did not decide in those opinions the matters we therein stated we were deciding. If that is correct then the rehearing for which the writer voted, should have been granted.

But since I think we did decide in that opinion the matter herein indicated as decided in 105 Utah 230, 142 P. 2d 873, and which the court does not now overrule, I must indicate an interpretation of the statute which I think is the only one compatible with the former declarations of this court.

This involves an interpretation of Sec. 76-6-17(3) and (4), U. C. A. 1943, which read in part:

"(3) * * * The supreme court, in case it stays or suspends the order or decision of the commission in any matter affecting rates * * * shall also by order direct the public utility affected to pay into court from time to time, there to be impounded until the final decision of the case or into some bank * * * under such conditions as the court shall prescribe, all sums of money which it may

collect from any person in excess of the sums such person would have been compelled to pay, if the order or decision of the commission had not been stayed or suspended.

"(4) * * * The commission * * * shall forthwith require the public utility affected * * * to keep such accounts, verified by oath, as may in the judgment of the commission suffice to show the amounts being charged or received by such public utility pending the review in excess of the charges allowed by the order or decision of the commission, together with the names and addresses of the persons to whom overcharges will be refundable, in case *the charges made by the public utility pending the review are not sustained by the supreme court*. The court may from time to time require such party petitioning for review to give additional security or to increase the said suspending bond whenever in the opinion of the court the same may be necessary to insure the prompt payment of such damages and such overcharges. Upon the final decision by the supreme court all moneys which the public utility may have collected pending the appeal in excess of those authorized by such final decision, together with interest in case the court ordered the deposit of such moneys in a bank or trust company, shall be promptly paid to the persons entitled thereto in such manner and through such methods of distribution as may be prescribed by the commission. * * *" (Italics added.)

Then follows a provision as to what is to be done with any money not claimed by individuals within one year "from the final decision of the supreme court." It is the commission's argument that the use of the phrase "final decision of the supreme court" indicates that the legislature meant the decision finally determining the controversy, rather than the decision finally determining any particular question arising in the controversy, while the utility contends it means until the court inquired into and determined the lawfulness of the order or decision of the commission.

The statute provides:

"The review shall not be extended further than to determine whether the commission has regularly pursued its authority including a determination of whether the order or decision under review violates any rights of the petitioner under the constitution of the United States or of the state of Utah. The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review." Sec. 76-6-16, U. C. A. 1943.

See the same section also as to reasonableness and discrimination.

But in determining whether the commission regularly pursued its authority we may inquire into such questions, among others, as to whether proper notice was given; whether a proper hearing was had, *McGrew* v. *Industrial Commission*, 96 Utah 203, 85 P. 2d 608; whether the order finds a justification in the evidence, that is to say whether there is competent evidence from which a reasonable judging mind could come to the conclusion at which the commission arrived. *Los Angeles & S. L. Ry. Co.* v. *Public Util. Comm.*, 80 Utah 455, 15 P. 2d 358; Id., 81 Utah 286, 17 P. 2d 287; whether the commission acted capriciously and arbitrarily in arriving at its decision, *Gilmer* v. *Public Utilities Commission*, 67 Utah 222, 247 P. 284; *Ostler* v. *Industrial Commission*, 84 Utah 428, 36 P. 2d 95; whether the commission misconceived and misapplied the law, *Mulcahy* v. *Public Service Commission*, 101 Utah 245, 117 P. 2d 298; *Bamberger Electric R. Co.* v. *Public Util. Commission*, 59 Utah 351, 204 P. 314; and whether the order or decision of the commission is confiscatory or otherwise deprives one of any rights protected by the constitution of the United States or of the state, *Salt Lake City* v. *Utah Light & Traction Co.*, 52 Utah 210, 173 P. 556, 3 A. L. R. 715.

When the order of the commission was brought before us on certiorari in 105 Utah 230, 142 P. 2d 873, the lawfulness of the order was assailed on a multiplicity of grounds, going in one form or another into every field mentioned above except that of proper notice. We resolved all questions in favor of the lawfulness of the order assailed except the one as to the basis or formula used for computing in terms of money, the new rates ordered by the commission. Let us set forth a picture of the problems or questions there involved. Complaint being made before the commission that the utility was discriminating in its rates against Utah users of toll lines, issues were joined and hearing had. The questions before the commission, four in number,

would unfold in this order: (a) Does the present intrastate rate schedule of the utility as to toll charges discriminate against the Utah users? The commission found the rate was discriminatory and we held that finding was justified by the evidence. (b) If the rates are discriminatory, is such discrimination unreasonable or is it justified by the difference in service and costs thereof? The commission found the discrimination was not justified and was unreasonable. We held that finding was justified by the evidence. (c) If the discrimination is unreasonable, that is, if the difference is not justified, should it be corrected by raising the lower rate, or by lowering the higher rate? The commission found the discrimination should be removed, that is the difference corrected by lowering the higher rate. We upheld that finding as justified by the evidence. (d) What is the amount of the unreasonable discrimination, that is what should the new rate be? The commission found that the amount of discrimination was the difference between the long line rates and the intrastate rates, and the new rate should therefore be the long line rates. We held this finding not justified by the evidence.

While numerous points were presented to us in the certiorari proceedings, they were all directed at these four findings, because if those findings were properly made the order of the commission must stand. Sec. 76-6-16, U. C. A. 1943.

The commission had found and held that the existing intrastate rates were too high and had ordered a reduction. Under the plain mandate of the statute, the order of the commission would not be stayed pending review by this court, or except upon special order by the court. Sec. 76-6-17, U. C. A. 1943. Any charges, therefore, by the utility in excess of that order were stayed. When this court ordered a stay it was only on the condition that all moneys collected in excess of the rate ordered by the commission be impounded until it was finally determined by the supreme court whether or not the commission was justified *in ordering the rates reduced.* Sec. 76-6-17, supra.

If the commission was not so justified, of course the rate charged was proper and the money collected would belong to the utility. But if. the court upholds the commission's determination that *the rate charged is too high,* then the utility during the review proceedings has been overcharging the customers, and it follows that the utility should not be entitled to the overcharge. That money, being an overcharge, belongs to the customer who paid it. The statute, Sec. 76-6-17, U. C. A. 1943, after providing that the court may stay the order of the commission pending review upon the impounding by the court of all moneys collected by the utility "in excess of the charges allowed by the order or decision of the commission" declares the utility must keep an account of all amounts so collected,

"together with the names and addresses of the persons to whom overcharges will be refundable, *in case the charges made by the public utility pending the review are not sustained by the supreme court.*" (Italics added.)

Here is a straight legislative declaration that in determining whether or not there is an overcharge in the rate collected by the utility—whether or not the customer is entitled to some refund—depends not upon whether the court sustains the reduced rate fixed by the order of the commission, but upon *whether the court sustains the charges made by the utility pending the review.* The order is suspended during the pendency of the review at the instance of the utility *to give it a chance to have its charges sustained by the court.* If the court does not sustain the *charges made* by the utility pending review, it follows as of course that such charge involved an overcharge. The amount of the overcharge is the money of the patron or customer. *Bear in mind that Sec. 76-6-17 (4), U. S. C. 1943, has to do with the desire of the utility to continue to charge its old rate, not with the fact that it resists the order of the commission.* If the utility did not desire to continue making the charges it had formerly made, it could have no occasion to ask a stay of the order even though it desired to have such

order reviewed as to its lawfulness. It covers only the period when the matter is pending before this court on the request of the utility to have this court sustain its old rates. If the court sustains the utility in its charges, of course the moneys collected belong to the utility and should be turned over to it as the person "entitled thereto." If the court refuses to sustain the utility in its charges, that is sustains the commission's finding that the charges are too high then the excess, whatever it may be, should be paid to the patrons or customers, who had overpaid proper charges, they being "the persons entitled thereto." The commission will determine, or prescribe the manner and method of determining to whom and how the overcharges shall be paid. This duty is imposed upon it by the statute. Sec. 76-6-17(4), U. C. A. 1943.

When 105 Utah 230, 142 P. 2d 873, the cause in which the moneys here involved were impounded, was before this court we refused to sustain the charges made by the utility. On the other hand we sustained the findings and holding of the commission that the charges made by the utility were discriminatory, and unreasonable, and that such rates should be reduced. Such holdings have the effect of saying that the utility charges made pending the review were excessive, involved overcharges, and that refunds of the overcharges should* be made to "the persons entitled thereto." Any impounded funds which were not overcharges should be paid to the utility as the "person entitled thereto."

This brings us to the effect of the decision of the court in 105 Utah 230, 142 P. 2d 873, upon the determination of the amount of overcharge. The statute and the stay order of the court impounded all moneys "collected by the utility in excess of the rate allowed by the order of the commission." This court sustained the finding that the charges made by the utility were excessive, but we refused to sustain the commission in fixing the excessive charge as the difference between the charges made by the utility and the long line rates, because of the absence of evidence that the long line rates were fair, just and reasonable. Pending the review

the utility paid into the impounded fund this difference as per the order of the court. Since we vacated the order of the commission as to the amount of reduction to be made in the rates held excessive the exact amount of the overcharge which the utility has been making pending the review is not at this time determinable in terms of dollars and cents. But the fact of overcharge has been settled, which overcharge is part at least of the money in the impounded fund. Until it is determined what a proper charge should be, we cannot tell what part, if any, of the impounded fund belongs to the utility and what part belongs to the patrons or customers who paid the overcharges. Of course, the utility would not be entitled to a writ of mandate which would give it more than is its fair and lawful share of the money. Since petitioner (the utility) has not shown what if any part of the fund belongs to it— is not an overcharge—it follows that it is not entitled to a permanent writ of mandate.

The alternative writ should be recalled and the cause dismissed. Further reasons for disagreement with the opinion of the court are set forth by Mr. Justice Wade in his dissenting opinion.

WADE, Justice (dissenting).

I dissent. I cannot agree with the oft repeated assertion in the prevailing opinion that this statute is clear and unambigous. I think the quotation in that opinion from 2 Lewis' Sutherland Statutory Construction to the effect that where the legislative intent is plainly expressed so that it is clear, certain and unambiguous, the courts have only the obvious duty to enforce the law according to its terms, has no application whatever to the problem here presented because the meaning of the terms used are not clear but are very ambiguous. A reading of both the prevailing opinion of Mr. Justice McDONOUGH, and the concurring opinion of Mr. Justice WOLFE discloses that this is true. Both

opinions laboriously point out that the statement in the statute,

"* * * in case the charges made by the public utility pending the review are not sustained by the supreme court"

does not mean what it appears to mean on its face because the supreme court does not pass on the question of whether the rates charged are reasonable or not, but only passes on the lawfulness of the order of the commission. Had that statement in the statute been clear and unambiguous it would not have required so much explaining. In my opinion, this statute is not one which is clear and unambiguous, but is one which obviously requires much interpreting.

Where, as here, construction of the statutes is necessary, the legislature by Section 88-2-2, U. C. A. 1943, has expressly called to our attention that:

"The statutes establish the laws of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and promote justice."

I therefore hold that it is our duty in interpreting this statute to take into consideration the objects of this statute and place an interpretation thereon, if possible, which will promote justice.

In my opinion, the objects of this statute, Section 76-6-17, U. C. A. 1943, was to impound the difference between the rates being charged by the public utility and that ordered by the commission, until the final decision of the rate proceedings in question before the commission, and then to distribute that fund to the persons entitled thereto under that final decision. If the objects of the legislature were as narrow as the prevailing opinion indicates, then certainly Mr. Justice WOLFE is right when he said the result "shocks our sense of justice." It is possible in this very case that the order of the Commission in reducing the rate may be sustained in full, and yet by reason of the interpretation

placed on this statute in the prevailing opinion, several years may elapse between the time of making the original order and the time when that order will become effective. That will mean that the commission will have determined that during all that time the rate charged was unreasonably high, and still, on account of a comparatively minor irregularity, several years will elapse before the reduction will become effective. It can be said with the utmost confidence that this does not effect the objects of the statute, nor does it promote justice.

Of course, if the statute were clear as held by the prevailing opinion, then there would be nothing that could be done about it. But is it clear? It is true that the statute repeatedly uses the term "pending review," which would indicate that the money was only to be collected and held until the supreme court had reviewed the decision of the commission. That provision could reasonably be construed as meaning that the review is pending until the matter is finally determined. Sec. 76-6-17, U. C. A. 1943, provides that the funds shall "be impounded until the final decision of the case." If it were not for the shocking results, this might well be interpreted as meaning the final decision of the case on review before the supreme court, but in view of those results, I think the more reasonable interpretation is that the funds are to remain "until the final determination of the case" before the commission.

This section also contains the following:

"* * * in case the charges made by the public utility pending the review are not sustained by the supreme court."

As already pointed out this court does not either sustain or pass on the rates charged by the public utility. The prevailing opinion therefore concludes that this must be interpreted as meaning "In case the supreme court does not sustain the order of the commission." To my mind it would be more reasonable to say that the legislature meant in case the rates charged by the public utility pending the

review are not sustained by the final decision of the controversy before the commission. Certainly it would be more in harmony with justice and make the results sensible.

Finally the statute says:

"Upon the final decision by the supreme court *all moneys which the public utility may have collected* pending the appeal *in excess of those authorized by such final decision* * * * shall be promptly paid *to the persons entitled thereto* * * *." (Emphasis ours.)

Here we have the term "final decision by the supreme court" expressely used and later referred to as "such final decision." If that term is *literally* rather than *liberally* construed it would mean that when the supreme court made it final decision on the matter presented to it the moneys which had been collected must be promptly distributed. But the above quotation also expressly provides that

"all moneys which the public utility may have collected * * * in excess of those *authorized by such final decision,* * * * shall be promptly paid to the persons entitled thereto * * *." (Emphasis ours.)

By using this language the legislature clearly assumed that the final decision of the supreme court would authorize the public utility to collect a certain definite sum of money, and all sums collected in excess of that sum should be paid to the persons from whom it was collected. However, the final decision of the supreme court does not authorize the collection of any money but merely determines whether the order of the commission is lawful or not. When we consider all of the provisions of this statute it seems to me to be clear that the legislature intended to hold the money until there was a final determination of the controversy before the commission and that then it should be distributed in accordance with that final determination, and that in using the terms "final decision of the case," "sustained by the supreme court," and "final decision of the supreme court" it had in mind the final decision of the controversy before the commission, but failed to recognize

the fact that the decision of the supreme court does not determine that controversy but merely determines whether the order of the commission is lawful.

To me it is inconceivable that the legislature could have intended to authorize the impounding of this fund, and then return it to the public utility before the final determination of the question whether the rates in question were reasonable. I therefore think that this statute should be so interpreted.