Sue NEEL, Plaintiff and Appellant,

v.

STATE of Utah, Defendant and Appellee.

No. 940282.

Supreme Court of Utah.

Feb. 2, 1995.

Daniel L. Wilson, Ogden, for plaintiff.

Jan Graham, Atty. Gen., Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, for defendant.

HOWE, Justice:

Plaintiff Sue Neel brought this action against her employer, the State of Utah, to collect personal injury protection ("PIP") benefits under Utah's Automobile No–Fault Insurance Act. The State initially moved to dismiss the complaint for failure to comply with the requirements of the Governmental Immunity Act. The trial court granted the motion without prejudice. On appeal, the Utah Court of Appeals held that because the action sounded in contract, the procedural requirements of the immunity act did not

apply. *Neel v. State,* 854 P.2d 581, 585 (Utah Ct.App.1993).

On remand, the State filed a motion for summary judgment, contending that Neel was barred from seeking PIP benefits from the State by the exclusive remedy provision of the Workers' Compensation Act. The district court granted the motion on that basis, and Neel appeals.

## I. FACTS

Neel was injured in a car accident in December 1990 while riding in a state-owned car in the course of her employment with the State. The State paid her all the workers' compensation benefits to which she was entitled. In this action, she seeks PIP benefits to the extent those benefits were not covered by workers' compensation, including reimbursement for loss of household services, second-job wage loss, and the difference between wage reimbursement under workers' compensation (seventy percent of lost wages) and under PIP (eighty-five percent of lost wages). *See* Utah Code Ann. § 31A–22–307. She contends that she is entitled to these benefits under section 31A–22–309(3) of the code, which provides, "The benefits payable to any injured person under [the PIP statute] are reduced by: (a) any benefits which that person receives or is entitled to receive as a result of an accident covered in this code under ... workers' compensation...."

At the time of the accident and all other dates relevant to this action, the State self-insured its motor vehicles as permitted by statute. *See* § 41–12a–301(4). The State's self-insurance program expressly excluded from coverage "bodily injury to any person who is entitled to payments or benefits under the provisions of Utah's Workers' Compensation Law."

## II. ANALYSIS

■ The facts are not in dispute. Because the parties raise only questions of law, this court gives the trial court's legal conclusions no deference and reviews them for correctness. *West Valley City Corp. v. Salt Lake County,* 852 P.2d 1000, 1002 (Utah 1993).

This case confronts an apparent conflict between Utah's no-fault and workers' compensation statutes. The No–Fault Act requires that *"[e]very* policy of insurance or combination of policies, purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 ... shall also include personal injury protection...." § 31A–22–302(2) (emphasis added). Section 41–12a–301(3)(a) declares that "the state ... shall maintain owner's or operator's security in effect continuously for their motor vehicles." Thus the State, along with all other employers, is required to have PIP coverage on its motor vehicles.

Meanwhile, the Workers' Compensation Act provides:

The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee ... shall be the *exclusive remedy against the employer* ... and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee....

§ 35–1–60 (emphasis added). Hence, while one statute requires every auto insurance policy—including those held by employers—to include PIP coverage, the other statute arguably bars injured employees from recovering any benefits from that coverage.

### A. IML Freight

This is not an issue of first impression for this court. Nearly two decades ago, we decided a declaratory judgment action based on this same conflict. *IML Freight, Inc. v. Ottosen,* 538 P.2d 296 (Utah 1975). Neel argues that *IML Freight* merely addressed the instant issue in dicta. However, a review of the briefs filed by the parties in that case and a careful reading of the opinion itself have led us to conclude otherwise.

*IML Freight* arose when employees of an interstate trucking company filed claims against the company, requesting no-fault benefits. The company filed an action to determine its responsibilities to comply with the no-fault statute and, more specifically, whether the workers' compensation exclusivity clause barred injured employees from ob-

taining benefits from their employers' no-fault coverage.

The court framed the issue in terms of whether the exclusivity provision "was repealed by the No–Fault concept." *Id.* at 297. The court discussed the historical importance of the exclusive remedy of workers' compensation and reasoned that discrimination would result if an employee injured in a motor vehicle could recover more benefits than an employee injured in another manner. *Id.* With little other discussion, the court held as follows:

> We believe and hold that the language used by the legislature [in the no-fault statute] did not impose upon an employer subject to the Workmen's Compensation Act, the heart-beat of which is exclusiveness of remedy, any additional burden *personally* to pay any injured employee extra, who happened to drive a motor vehicle, as against fellow employees who happened to push dock dollies or ride cranes to their injury or death.

*Id.* (emphasis added).

■ We find a number of problems with this reasoning and holding. First, the word "personally" in the holding implies that although an employer need not personally pay PIP benefits, perhaps the employer's private no-fault insurer would have to do so. *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.24(e), at 14–69 n. 4 (1994) (citing *IML Freight* and speculating that its holding may apply only to self-insurer). Whether an employee is entitled to PIP benefits cannot turn on the employer's decision to secure private insurance or to self-insure. *See* § 41–12a–407(2) (self-insurers "shall pay benefits to persons injured from the self-funded person's operation, maintenance, and use of motor vehicles as would an insurer issuing a policy to the self-funded person"); *Neel v. State,* 854 P.2d 581, 584 (Utah Ct. App.1993) ("The State's election to self-insure cannot become a stumbling block to the swift recovery of PIP benefits."). Although parts of *IML Freight* can be read to clarify the court's use of the word "personally," the holding remains confusing.

The court's discrimination-of-workers theory is also troubling. It ignores the legislature's requirement that no-fault coverage apply to "[e]very policy of [auto] insurance." § 31A–22–302(2). Thus, contrary to *IML Freight,* the no-fault statute effectively imposed upon all owners of motor vehicles—including employers—an additional burden to buy PIP coverage for their vehicles.

The legislature chose to regulate this aspect of insurance for all owners of motor vehicles, including employers who own the motor vehicles used in their businesses. This can hardly be deemed discrimination. "[O]ur legislature has the power and duty to promote the public health, safety, and general welfare of all citizens. In furtherance of that power and duty, conditions and regulations for the operation of motor vehicles on our public roads and highways are a proper subject for legislative action." *State v. Stevens,* 718 P.2d 398, 399 (Utah 1986) (per curiam) (footnote omitted). Indeed, the only discrimination that is involved here arises from *IML Freight:* One who is injured in a motor vehicle accident and is covered by workers' compensation is entitled to less benefits than another who is also injured in such an accident but is not covered by workers' compensation.

### B. *Utah Code Ann. § 31A–22–309(3)*

The most troubling aspect of *IML Freight* is its cursory treatment of the statute that directly confronts this issue. The no-fault statute explicitly provides, "The benefits payable to any injured person under [the PIP statute] are reduced by: (a) any benefits which that person receives or is entitled to receive as a result of an accident covered in this code under any workers' compensation or similar statutory plan...." § 31A–22–309(3). At the time *IML Freight* was decided, the substantially identical statute was numbered at section 31–41–7(3) (Supp.1973).

*IML Freight* mentions the statute only in passing:

> If there be an argument that the No–Fault Act supersedes the Workmen's Compensation Act because it allows for deduction of Workmen's Compensation payments from a No–Fault insurance judgment or settlement, constitutionally it

would appear to be flattened, since the added compensation thus afforded obviously would discriminate in favor of one type of employee, at the expense of an employer, and to the exclusion of others.

*IML Freight*, 538 P.2d at 297. We disagree with this analysis.

"The court's principal duty in interpreting statutes is to determine legislative intent, and the best evidence of legislative intent is the plain language of the statute." *Sullivan v. Scoular Grain Co. of Utah*, 853 P.2d 877, 879 (Utah 1993) (citing *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984)). "[W]e presume that the Legislature used each term advisedly, and we give effect to each term according to its ordinary and accepted meaning." *Versluis v. Guaranty Nat'l Cos.*, 842 P.2d 865, 867 (Utah 1992).

 The plain language of section 31A–22–309(3)(a) indicates that the legislature considered the very issue that is at hand in this case and decided that PIP benefits are payable to an injured employee but that these benefits are reduced by "any benefits which that person receives ... under ... workers' compensation." In other words, an injured party should be able to receive PIP benefits to the extent that those benefits are not already paid by workers' compensation. The court of appeals has already so interpreted the statute:

> We interpret [section 31A–22–309(3)(a) ] as expressing the legislature's determination that, as between a no-fault insurer and a workers' compensation insurer ..., the no-fault insurer should not bear the burden of paying the benefits due to an employee accidently injured in the course of employment even if that injury occurred in a vehicle covered by the requisite no-fault insurance. Accordingly, *the no-fault insurer is permitted by this statute to exclude from coverage provided under its insurance policy any liability for injuries that are compensable under the workers' compensation statute....*

*Bevans v. Industrial Comm'n*, 790 P.2d 573, 577 (Utah Ct.App.1990) (emphasis added). Thus where an accident is covered by both workers' compensation and no-fault insurance, the statute permits a no-fault insurer to

exclude *some* liability—that which is compensable under workers' compensation—but not *all* liability.

In oral argument, the State contended that the PIP statute was intended to benefit only employees driving their own vehicles, not employees driving their employers' vehicles. This strained interpretation would have us read language into an otherwise unambiguous statute. The State cites no authority for this assertion, and our own research has not uncovered any case supporting this theory.

Although there is some split of authority on whether the exclusive remedy clause bars an action by employees against their employers' no-fault insurance, the division is primarily due to the differing language of the various no-fault statutes. *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.24(e), at 14–68 (1994); Vitauts M. Gulbis, Annotation, *Validity and Construction of No–Fault Insurance Plans Providing for Reduction of Benefits Otherwise Payable by Amounts Receivable From Independent Collateral Sources*, 10 A.L.R.4th 996, 1010–13 (1981).

No split of authority appears, however, in states whose no-fault statutes specifically provide that PIP benefits will be reduced by workers' compensation benefits as does section 31A–22–309(3)(a). These states have uniformly allowed both types of benefits. *See, e.g., Tate v. Industrial Claim Appeals Office*, 815 P.2d 15, 19 (Colo.1991) ("This provision coordinates the workers' compensation and PIP benefits so that the injured person does not receive duplicate benefits."); *Brown v. Boston Old Colony Ins. Co.*, 247 Ga. 287, 275 S.E.2d 651, 652 (1981) (declining to go against clear statutory language to deny PIP benefits to injured employee); *Allstate Ins. Co. v. Sentry Ins. Co. of Michigan*, 175 Mich.App. 157, 437 N.W.2d 338, 339 (1989) (statute's purpose "is to reduce the basic cost of insurance by requiring a set-off of those government benefits [including workers' compensation] that duplicate no-fault benefits and coordinating those benefits a victim may receive"); *Carriers Ins. Co. v. Burakowski*, 93 Misc.2d 100, 402 N.Y.S.2d 333, 334 (1978) (declining to go against clear statutory language to deny PIP benefits to injured employee).

This interpretation is consistent with that of a respected insurance law treatise:

> A provision of the no-fault law permitting an offset of benefits received under worker's compensation laws ... rather than the total disqualification of employed persons, is the customary approach. Thus, *while the PIP insurer has no absolute defense, it may receive a credit for the compensation payments which have been received.*

8D John A. Appleman, *Insurance Law and Practice* § 5187, at 574–75 (1981) (footnotes omitted) (emphasis added).[1]

Had the legislature intended PIP insurers to have an absolute defense against injured employees, lawmakers could have easily added language to the statute indicating this intent. Interestingly, in wording the uninsured and underinsured motorist coverage statute, the legislature did that very thing by adding this language: "This coverage does not apply to an employee, who is injured by an uninsured motorist, whose exclusive remedy is provided by Title 35, Chapter 1, Workers' Compensation." § 31A–22–305(4)(b)(ii). No similar language is included in the PIP statutes, and we have " 'no power to rewrite a statute to make it conform to an intention not expressed.' " *In re Criminal Investigation,* 754 P.2d 633, 640 (Utah 1988) (quoting *Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n,* 107 Utah 502, 505, 155 P.2d 184, 185 (Utah 1945)).

### III. CONCLUSION

This case is simply an action by an employee, Neel, against her employer's no-fault insurer. The State's designated insurer here is the State itself. The workers' compensation exclusivity provision does not bar this action. No-fault insurers, including self-insurers, are required to pay PIP benefits to injured employees to the extent those benefits exceed workers' compensation benefits.

In so holding, we overrule *IML Freight* insofar as it is inconsistent with this opinion. We are keenly aware of the doctrine of stare decisis and its importance as " 'a cornerstone of the Anglo–American jurisprudence that is crucial to the predictability of the law and the fairness of adjudication.' " *State v. Menzies,* 889 P.2d 393, 399 (1994) (quoting *State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993)). However, in the case of *IML Freight,* we are " 'clearly convinced that the rule was originally erroneous ... and that more good than harm will come by departing from [its] precedent.' " *Menzies,* 889 P.2d at 399 (quoting John Hanna, *The Role of Precedent in Judicial Decision,* 2 Vill.L.Rev. 367, 367 (1957)).

Although the State's self-insurance program excludes PIP benefits to any person entitled to workers' compensation benefits, this exclusion is not in harmony with statutory requirements and is therefore invalid. *Farmers Ins. Exch. v. Call,* 712 P.2d 231, 233 (Utah 1985) ("An insurer has the right to contract with an insured as to the risks it will or will not assume, as long as neither statutory law nor public policy is violated."); *see also Ferro v. Utah Dep't of Commerce,* 828 P.2d 507, 512 n. 7 (Utah Ct.App.1992) ("If an agency regulation is not in harmony with [a] statute, it is invalid.").

We reverse the district court's grant of summary judgment and remand to the trial court for further proceedings.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.

---

1. Many cases cited by the parties are not persuasive because those jurisdictions apparently do not have statutes similar to section 31A–22–309(3) that explain how the legislature intended insurers to coordinate no-fault and workers' compensation benefits. *See, e.g., Gullett v. Brown,* 307 Ark. 385, 820 S.W.2d 457, 459 (1991) (workers' compensation exclusivity clause barred claim for uninsured motorist benefits); *CNA Ins. Co. v. Colman,* 222 Conn. 769, 610 A.2d 1257, 1260 (1992) (same); *Affiliated FM Ins. Co. v. Grange Mut. Casualty Co.,* 641 S.W.2d 49, 51 (Ky.Ct.App.1982) (employer's insurer liable for both workers' compensation and basic reparation benefits); *Heavens v. Laclede Gas Co.,* 755 S.W.2d 331, 333 (Mo.Ct.App.1988) (self-insured employer required to provide both uninsured motorist coverage and workers' compensation to employee); *Ferry v. Liberty Mut. Ins. Co.,* 392 Pa.Super. 571, 573 A.2d 610, 612 (1990) (uninsured motorist benefits independent of workers' compensation).