*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MIDWEST FAMILY MUTUAL INSURANCE,
*Appellee,*

*v.*

HAYLEE HINTON,
*Appellant.*

No. 20230615
Heard October 25, 2024
Filed March 20, 2025

On Appeal of Interlocutory Order

Third District Court, Salt Lake County
The Honorable Laura Scott
No. 220904681

Attorneys:

Kirk G. Gibbs, Patrick Burt, Devin H. Geier, Katia K. Conrad,
Salt Lake City, for appellee

Michael Banks, Mark L. Anderson, Amberly Page, Salt Lake City,
for appellant

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Haylee Hinton suffered extensive injuries when she crashed into a motorist who ran a red light. Hinton first sought compensation for her injuries from her employer's workers' compensation insurer. She then obtained a settlement from the insurance carrier of the motorist who caused the accident. Hinton

also brought a claim for underinsured motorist benefits against Midwest Family Mutual Insurance (Midwest), her underinsured motorist coverage provider. Hinton submitted her underinsured motorist claim to arbitration as Utah law permits.

¶2 Midwest responded by seeking a declaratory judgment from the district court that would limit the categories of damages that Hinton could recover in that arbitration. At that time, Utah Code section 31A-22-305.3(4)(c)(i) directed that "[u]nderinsured motorist coverage . . . does not cover any benefit paid or payable under Title 34A, Chapter 2, Workers' Compensation Act." The district court interpreted the underinsured motorist statute to mean that "'payable' amounts . . . include past medical expenses, future medical expenses, and two-thirds of lost wages." The district court ruled that Hinton could not recover those categories of damages from Midwest.

¶3 Hinton petitioned for interlocutory review. Before us, she argues that the district court lacked jurisdiction to issue its order and misinterpreted the statute. While the district court had jurisdiction to issue its order, it read the statute incorrectly. We conclude that "payable" means benefits that can or may be paid to a specific claimant in a particular case. Accordingly, we vacate the district court's order and remand the matter for further proceedings.

## BACKGROUND

¶4 Hinton was driving her employer's van when she crashed into a motorist who had run a red light.[1] Hinton was working when the accident occurred. Hinton suffered injuries to her knee, back, and neck. She underwent two knee surgeries. Hinton also sought treatment for anxiety and post-traumatic stress disorder. She claims she has incurred $175,314.51 in medical expenses and lost $24,960.00 in earnings. Hinton has an expert opinion estimating that her future care, including medical expenses, will cost $3,128,796.40.

---

[1] The district court did not explicitly make any findings of fact in the proceedings below. We do not make any now, as "it is not the function of an appellate court to make findings of fact." *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979). Our recitation of the facts is therefore based on what we see alleged in the record, but we emphasize that as far as we can tell, no facts have been established.

¶5     Hinton first filed a claim for her medical expenses and lost wages with her employer's workers' compensation insurer.[2] Workers' compensation paid Hinton $11,225.56. Her claim is not ongoing, but the parties dispute how and why it ended. Hinton maintains that her lost wage benefit ended because she went back to work. Hinton says she returned to work because she could not pay her bills. Even once she resumed work, Hinton was going through workers' compensation for her medical appointments, but the insurer, responsible for paying her medical bills, was slow to provide coverage. According to Hinton, the insurer eventually told her that the "case was closed."

¶6     Midwest's position is that Hinton "voluntarily abandoned her workers' compensation claim."

¶7     Hinton next made a claim against the accident-causing motorist's insurance carrier and obtained a $50,000 policy-limits settlement. Hinton paid back workers' compensation using the funds she obtained from the settlement.

¶8     Hinton then claimed underinsured motorist benefits from Midwest.[3] Hinton contended that "the liability settlement received from the other driver was insufficient to compensate her for injuries allegedly incurred in the accident" and sought to collect the difference between Midwest's policy limit and the $50,000 settlement. Hinton invoked her right under Utah's underinsured

---

[2] Utah's Workers' Compensation Act authorizes various types of benefits for employees injured or sick on the job, including compensation for permanent total and partial disability, *see* UTAH CODE §§ 34A-2-412, -413, temporary total and partial disability, *see id.* §§ 34A-2-410, -411, and medical expenses, *see id.* § 34A-2-418. The Act does not cover pain and suffering damages. *See generally id.* §§ 34A-2-401 to -424.

[3] Underinsured motorist insurance allows an insured who "purchases a set limit of [underinsured motorist insurance], guaranteeing recovery for injuries up to that amount," to collect the difference between those limits and the insurance limits of the person responsible for the insured's injuries. *See* 9 JORDAN R. PLITT ET AL., COUCH ON INSURANCE § 122:3 (3d ed. Dec. 2024 update). "The only limitations on uninsured/underinsured motorist . . . protection are those" set forth in a state's underinsured motorist statute. *Id.* § 122:3 n.4.

motorist statute to submit her claim to arbitration. *See* UTAH CODE § 31A-22-305.3(8)(a).

¶9 Midwest responded with a declaratory judgment action in district court. Midwest sought a "determination regarding whether the underinsured motorist policy issued by Midwest . . . extend[ed] to cover certain portions of" Hinton's "claimed losses."

¶10 At that time, Utah's underinsured motorist statute instructed that underinsured motorist coverage

> (i) does not cover any benefit paid or payable under Title 34A, Chapter 2, Workers' Compensation Act, except that the covered person is credited an amount described in Subsection 34A-2-106(5);[4]
>
> (ii) may not be subrogated by a workers' compensation insurance carrier, workers' compensation insurance, uninsured employer, the Uninsured Employers Fund created in Section 34A-2-704, or the Employers' Reinsurance Fund created in Section 34A-2-702;

---

[4] The statute explained that "[u]nderinsured motorist coverage under Subsection 31A-22-302(1)(c) provides coverage for a covered person who is legally entitled to recover damages from an owner or operator of an underinsured motor vehicle because of bodily injury, sickness, disease, or death," UTAH CODE § 31A-22-305.3(2)(a) (2023), and that "'[c]overed person' [as used in this section] has the same meaning as defined in Section 31A-22-305," *id.* § 31A-22-305.3(1)(a). Utah Code section 31A-22-305(1) (2023) defined "covered person" to include, as relevant here, "the named insured," "any person occupying or using a motor vehicle: (i) referred to in the policy; or (ii) owned by a self-insured," and "any person who is entitled to recover damages against the owner or operator of the uninsured or underinsured motor vehicle because of bodily injury." Utah Code section 31A-22-302(1)(c) (2023) directed that "underinsured motorist coverage under Section 31A-22-305.3, unless affirmatively waived," is a required component of motor vehicle insurance policies.

(iii) may not be reduced by benefits provided by workers' compensation insurance.

*Id.* § 31A-22-305.3(4)(c)(i)–(iii) (2023).[5]

¶11 Midwest argued that its underinsured motorist coverage did "not include . . . amounts that would have been payable to [Hinton] under workers' compensation—had [Hinton] not abandoned her claim." These included categories of damages the Workers' Compensation Act authorized, including Hinton's past and future medical expenses and sixty-six and two-thirds percent of her lost wages. *See id.* § 34A-2-410(1)(a) (explaining that "in [the] case of temporary disability, . . . the employee shall receive 66-2/3% of that employee's average weekly wages at the time of the injury"); *see id.* § 34A-2-418(1) (noting that "the employer or the insurance carrier shall pay reasonable sums for medical, nurse, and hospital services, for medicines, and for artificial means, appliances, and prostheses necessary to treat the injured employee"). Midwest therefore asked the district court to limit Hinton's recovery in arbitration to categories of damages that *are never* available in workers' compensation: one-third of her lost-wage claim and the value of her damages claim for pain and suffering. *See id.* § 34A-2-410; *see generally id.* §§ 34A-2-401 to -424 (declining to cover pain and suffering damages).

¶12 The district court agreed with Midwest's interpretation of the underinsured motorist statute. The district court held that the word "payable" in Utah Code section 31A-22-305.3(4)(c)(i) (2023) was unambiguous and that "'[p]ayable' amounts under the Workers' Compensation Act include past medical expenses, future medical expenses, and two-thirds of lost wages. Because [these

---

[5] Midwest filed its action in August 2022, but we cite the version of the statute in effect when the district court issued its June 2023 order. That is because we are reviewing the court's interpretation of the June 2023 version of the statute. In any event, the quoted statutory text was the same in August 2022 and June 2023. We also note that the Legislature has since amended Utah Code section 31A-22-305.3(4)(c). *See* Motor Vehicle Insurance Modifications, H.B. 231, 2024 Leg., Gen. Sess. (Utah 2024). Subsection 31A-22-305.3(4)(c)(i) now directs that "in order to avoid double recovery, [underinsured motorist coverage] does not cover any benefit under Title 34A, Chapter 2, Workers' Compensation Act, . . . provided by the workers' compensation insurance carrier."

amounts] were either actually paid or were 'payable' through workers' compensation," Hinton could not recover them from Midwest in arbitration.

¶13   Hinton filed a notice of interlocutory appeal in the district court and petitioned us for permission to appeal the court's order. We granted her petition. Hinton challenges the district court's jurisdiction to issue its order and, assuming the court had jurisdiction, asks us to vacate or reverse the court's order.

## ISSUES AND STANDARD OF REVIEW

¶14   Hinton first questions the district court's subject matter jurisdiction. Hinton raises this before us in the first instance, so we have no district court decision to review.

¶15   Hinton also challenges the district court's interpretation of Utah Code section 31A-22-305.3(4)(c)(i) (2023). The merits of this case turn on what the Legislature intended when it used the word "payable" in the statute. "A district court's interpretation of a statute is a question of law, which we review for correctness." *Bryner v. Cardon Outreach, L.L.C*, 2018 UT 52, ¶ 7, 428 P.3d 1096 (cleaned up).

## ANALYSIS

¶16   Hinton first argues that the district court lacked jurisdiction to issue its order. She then makes three arguments about the district court's interpretation of Utah Code section 31A-22-305.3(4)(c)(i) (2023). Hinton claims that the district court's interpretation is erroneous because it contravenes: (1) the statute's plain text; (2) the statute's legislative history; and (3) the policies behind the workers' compensation and underinsured motorist schemes.[6]

---

[6] Hinton also asserts that, regardless of whether the district court correctly interpreted the statute, the district court erred by presuming that the amounts and types of medical expenses and lost wage benefits available to her were the same under the workers' compensation and underinsured motorist statutes. Because we conclude that the district court incorrectly interpreted Utah Code section 31A-22-305.3(4)(c)(i) (2023), we need not address Hinton's alternative argument.

I. THE DISTRICT COURT HAD JURISDICTION TO DETERMINE WHAT CATEGORIES OF DAMAGES ARE UNRECOVERABLE UNDER HINTON'S UNDERINSURED MOTORIST COVERAGE

¶17   Hinton argues that the district court lacked jurisdiction to issue its order, in which the court concluded that all of Hinton's past and future medical expenses and two-thirds of her lost income were "payable" under the Workers' Compensation Act. Hinton claims that "the district court effectively decided the workers' compensation benefits to which she was entitled." This is a problem, according to Hinton, because under Utah's Workers' Compensation Act, the Utah Labor Commission has exclusive jurisdiction to make workers' compensation awards and to determine the workers' compensation benefits to which an employee is entitled.

¶18   Hinton relies on *Sheppick v. Albertson's, Inc.*, 922 P.2d 769 (Utah 1996), for the proposition that only the Utah Labor Commission "can make awards of benefits under the [Workers' Compensation] Act and the necessary factual and legal conclusions in support thereof." *Id.* at 775.

¶19   To start, we note—and Midwest emphasizes—that Hinton did not raise this issue before the district court. Hinton admits that this argument is unpreserved. This court only takes up unpreserved issues in certain limited and defined circumstances. *See Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828 (explaining that we have recognized "some limited exceptions to our general preservation rule"). But an assertion that the district court lacked subject matter jurisdiction is one of the arguments that can be raised for the first time on appeal. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702. As a result, we address Hinton's unpreserved jurisdictional argument.

¶20   The Workers' Compensation Act assigns the administration of the Act exclusively to the Labor Commission. *See* UTAH CODE § 34A-2-112(1). Hinton relies on a statement we made in *Sheppick* that district courts "have no jurisdiction whatsoever over cases that fall within the purview of the Workers' Compensation Act." 922 P.2d at 773.

¶21   We later clarified, however, that "[o]ur statements in *Sheppick* [were not] . . . as sweeping as they appear[ed]." *Granite Sch. Dist. v. Young*, 2023 UT 21, ¶ 32, 537 P.3d 225. Notably, we did not mean that "district courts lack jurisdiction over any case that somehow touches the [Workers' Compensation] Act." *Id.* ¶ 31.

¶22 We explained that *Sheppick* held "that the Act's logic and structure demand that only the Labor Commission can 'issue [workers'] compensation awards' and 'make the necessary factual findings upon which' those awards are based." *Id.* ¶ 33 (quoting *Sheppick*, 922 P.2d at 775). It follows that "district courts have no jurisdiction whatsoever over the determination of the amount of a compensation award or an award of medical benefits." *Id.* ¶ 34 (cleaned up).

¶23 The district court possessed jurisdiction over this matter because Midwest did not ask it to do something that the Act assigns exclusively to the Labor Commission. In its motion for relief, Midwest sought "a determination regarding whether the underinsured motorist insurance policy issued by Midwest . . . extend[ed] to cover certain portions" of Hinton's "claimed losses." This required the district court to interpret the underinsured motorist statute. And the court's determination of what the statute allowed Hinton to recover from Midwest was a determination separate from "the amount of a [workers'] compensation award or an award of medical benefits." *Id.* (cleaned up). That is, Midwest did not ask the district court to assess the extent of the damages Hinton suffered and rule whether she would be entitled to recover workers' compensation benefits for them.

¶24 Hinton's characterization of Midwest's request to the district court as one that sought a judgment "as to the amount of worker[s'] compensation benefits which" Hinton was entitled is not supported by the record. Neither is Hinton's statement that the district court decided the amount of workers' compensation benefits to which Hinton was entitled. Midwest's petition for relief asked the district court for a declaration concerning the legal scope of its policy, specifically stating that: (1) Midwest was not liable to Hinton under its policy for costs and expenses which are and were payable under Utah's Workers' Compensation Act; (2) Midwest was not liable for Hinton's past and future medical expenses; and (3) Midwest's policy obligation was limited to thirty-three and one-third percent of Hinton's lost wages. Interpreting the underinsured motorist statute, the district court declared in its order that Midwest's coverage did not cover any benefit paid or payable under Utah's Workers' Compensation Act and stated that because past medical expenses, future medical expenses, and two-thirds of lost wages were payable through workers' compensation, Hinton could not recover them from Midwest. In other words, because the district court was interpreting the Act's

scope, and not examining whether Hinton's injuries qualified her for benefits, the district court did not tread on ground exclusively assigned to the Labor Commission.

¶25 There is, however, another jurisdictional issue lurking within the record. Although the parties did not raise this issue, we address it because courts "have a sua sponte obligation to carefully consider the propriety of their own jurisdiction." *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 26, 289 P.3d 582. And, although we conclude that we possess jurisdiction, we take the time to show our math in case some perspicacious reader spots the issue and wonders why we exercised jurisdiction.

¶26 Hinton petitioned for permission to file an interlocutory appeal under rule 5 of the Utah Rules of Appellate Procedure. Rule 5 governs discretionary appeals from interlocutory orders and requires parties seeking an appeal from an interlocutory order to file "a petition for permission to appeal from the interlocutory order with the appellate court . . . within 21 days after the entry of the trial court's order." UTAH R. APP. P. 5(a).

¶27 But it is not clear that the district court's order in this case was interlocutory. Once the court gave Midwest the relief it asked for, it arguably "dispose[d] of all parties and claims to an action" and, consequently, was a "final" order. *See Bradbury v. Valencia*, 2000 UT 50, ¶ 10, 5 P.3d 649. Unlike interlocutory orders, final orders are governed by rules 3 and 4 of the Utah Rules of Appellate Procedure. These rules require appellants to file "a notice of appeal with the trial court clerk within" thirty days after the date of entry of the order appealed from. UTAH R. APP. P. 3(a)(1); *see also id.* R. 4(a).

¶28 In *Cedar Surgery Center, L.L.C. v. Bonelli*, we rejected the appellees' argument that we lacked jurisdiction to hear an interlocutory appeal that should have been brought as a direct appeal. 2004 UT 58, ¶¶ 10–11, 96 P.3d 911. There, the appellant "petitioned for permission to appeal an interlocutory order." *Id.* ¶ 9. The appellees argued that this was error because the order being appealed was final, and any appeal should have been sought under rule 3 of the Utah Rules of Appellate Procedure. *Id.* We did not "decide whether the district court's order was final or not because, even assuming that the order was, in fact, a final order, [we] would nevertheless have jurisdiction pursuant to rule 3" and rule 4. *See id.* ¶ 10. We construed the appellant's petition for permission to appeal an interlocutory order as a "notice of appeal"

under rule 3 because the petition was timely filed with the district court clerk. *Id.* ¶¶ 10–11. We therefore held that we had jurisdiction to entertain the appeal. *Id.* ¶ 10.

¶29 Much like we did in *Cedar Surgery*, we need not decide whether the district court's order was final. Even if it was, we have jurisdiction over Hinton's appeal under rules 3 and 4 of the Utah Rules of Appellate Procedure. Within thirty days after the date of entry of the court's order, Hinton filed a notice with the district court clerk that informed the court that Hinton "petitioned the Utah Supreme Court for permission to appeal from the Court's order." We may construe Hinton's timely filed notice as a notice of appeal. This assures our jurisdiction to hear the matter.

II. THE DISTRICT COURT MISINTERPRETED UTAH'S UNDERINSURED MOTORIST STATUTE

¶30 When the district court issued its order, Utah law directed that underinsured motorist coverage

> (i) does not cover any benefit *paid or payable* under Title 34A, Chapter 2, Workers' Compensation Act, except that the *covered person* is credited an amount described in Subsection 34A-2-106(5);
>
> . . .
>
> (iii) may not be reduced by benefits provided by workers' compensation insurance, uninsured employer, the Uninsured Employers Fund created in Section 34A-2-704, or the Employers' Reinsurance Fund created in Section 34A-2-702.

UTAH CODE § 31A-22-305.3(4)(c)(i), (iii) (2023) (emphasis added); *see supra* ¶ 10 n.4. The Legislature did not define the word payable in the statute, and the parties' dispute hinges on what the Legislature meant when it used that word.

¶31 The district court reviewed the language and concluded that payable meant any category of damages potentially recoverable under the Workers' Compensation Act, regardless of whether a decision has been made about if they are recoverable in a particular case. The court stated, "'Payable' amounts under the Workers' Compensation Act include past medical expenses, future medical expenses, and two-thirds of lost wages." And because those categories "were either actually paid or were 'payable' through workers' compensation, Ms. Hinton [was] not entitled to

recover" them in the arbitration proceeding against Midwest. Essentially, the district court reasoned that because these categories of damages were generally available to claimants under Utah's Workers' Compensation Act, Hinton could not recover them from Midwest.

¶32   Hinton asserts that the district court's interpretation is inconsistent with the statute's text, its legislative history, and the policies underlying the underinsured motorist and workers' compensation schemes. We agree that the district court misinterpreted the statute. But for the reasons explained below, we adopt an interpretation different from the one Hinton proposes.

*A. The District Court's Interpretation of the Statute Did Not, as Hinton Asserts, Impermissibly Permit Midwest to Reduce the Coverage Available to Her*

¶33 Hinton argues that the district court's interpretation contravenes the statute's plain language. She claims that the district court's interpretation "reduced [her] . . . potential [underinsured motorist] coverage by the benefits that she arguably could have received—but undisputedly did not receive—from the workers' compensation insurer." Hinton contends that this interpretation is incorrect because it reads out the portion of the statute which instructs that "[u]nderinsured motorist coverage . . . may not be reduced by benefits provided by workers' compensation insurance." UTAH CODE § 31A-22-305.3(4)(c)(iii) (2023). In Hinton's view, excluding categories of benefits from her recovery reduces the amount of underinsured motorist coverage available to her.

¶34   We have rejected a reading of the statute much like the one Hinton advances. In *Truck Insurance Exchange v. Rutherford*, Danny Rutherford was driving a work van in the course of his employment when he was struck by an underinsured driver. 2017 UT 25, ¶ 2, 395 P.3d 143. He filed claims for workers' compensation and underinsured motorist benefits, arguing that Utah Code section 31A-22-305.3(4)(c)(iii) (2016) meant "that underinsured motorist insurance must compensate [him] in full, up to the limits of the policy, irrespective of whether workers' compensation insurance has already covered a portion of the claim." *Id.* ¶ 1. Utah Code section 31A-22-305.3(4)(c)(iii) (2016) used the same language as Utah Code section 31A-22-305.3(4)(c)(iii) (2023)—namely, that "[u]nderinsured motorist coverage . . . may not be reduced by benefits provided by workers' compensation insurance."

¶35 Rutherford's argument did not convince us. *See Rutherford*, 2017 UT 25, ¶ 9. We interpreted Utah Code section 31A-22-305.3(4)(c)(iii) (2016) and held that the statute's plain language dictated that underinsured motorist insurers "*cannot lower* [*their*] *policy limits in response to the benefits that workers' compensation pays.*" *Id.* (emphasis added). We relied on the definition of "coverage": "the 'amount available to meet liabilities.'" *Id.* (quoting *Coverage*, WEBSTER'S NEW COLLEGIATE DICTIONARY (8th ed. 1973)). We explained that an underinsured motorist coverage provider would "reduce its coverage by the benefits provided by workers' compensation" if it reduced its policy limit based on the amount of workers' compensation a claimant received. *Id.* For example, if an underinsured motorist policy "offers coverage up to $100,000 and workers' compensation offers coverage up to $50,000," the workers compensation benefits "do not reduce the $100,000 [underinsured motorist] policy [coverage] to $50,000." *Id.* But "[i]f the insured has damages of $125,000, . . . the workers' compensation benefits do reduce the benefits that the [underinsured motorist] insurer must pay." *Id.* In that situation, "after deducting the workers' compensation award of $50,000, the [underinsured motorist] insurer must pay only the remaining $75,000 of the insured's damages." *Id.* Utah Code section 31A-22-305.3(4)(c)(iii) (2016), then, prohibited an underinsured motorist insurer from lowering its policy limit in response to the benefits that workers' compensation provided a claimant.

¶36 Utah Code section 31A-22-305.3(4)(c)(iii) (2023) similarly prohibited an underinsured motorist insurer from reducing its policy limit in response to the amount of workers' compensation benefits provided. While the district court's interpretation unquestionably reduced what Hinton might recover as underinsured motorist *benefits*, the court's interpretation did not reduce Midwest's potential underinsured motorist *coverage*. Moreover, there is no indication on this record that Midwest lowered—or attempted to lower—its policy limit in response to the benefits Hinton received from workers' compensation. Hinton's argument that the district court's interpretation contravened the plain language of Utah Code section 31A-22-305.3(4)(c)(iii) (2023) is therefore incorrect.

*B. When We Look at the Statute as a Whole, It Becomes Apparent that "Payable" Means Benefits that Can or May Be Paid, or Are Capable of Being Paid, to a Claimant in a Particular Case*

¶37 We next address Hinton's assertion that the word "payable" is subject to two reasonable interpretations and, as a result, is ambiguous. She first claims that a reasonable person could interpret payable to mean "amounts that could be paid under the Workers' Compensation Act, *i.e.* the type of benefits that could be awarded." Or, she argues, a reasonable person could interpret the statute to mean that benefits are payable only if they "have been awarded or are owed."

¶38  Hinton believes that because the statute's plain language is ambiguous, the district court should have considered secondary sources, including legislative history and policy considerations, to ascertain its meaning. And, had the court done that, it would have concluded that in this context, the ordinary meaning of payable is "([o]f a sum of money or a negotiable instrument) that is to be paid." (Quoting *Payable*, BLACK'S LAW DICTIONARY (11th ed. 2019).)

¶39 Midwest, on the other hand, argues that payable is unambiguous and maintains that the district court's interpretation is correct. Midwest contends that payable ordinarily means something "that may, can, or must be paid." (Quoting *Payable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020).) According to Midwest, the only reasonable interpretation is that payable means the type of benefits that are available under the workers' compensation statute.

¶40  When we interpret a statute, our goal "is to evince the true intent and purpose of the Legislature." *Rutherford*, 2017 UT 25, ¶ 7 (cleaned up). The best evidence of the Legislature's intent is a statute's plain language. *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 18, 506 P.3d 509. "When the meaning of a statute can be discerned from its language, no other interpretive tools are needed." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (cleaned up). Moreover, when we interpret statutes, "we read the text of a statute as a whole and interpret its provisions in harmony with other subsections." *State v. Maestas*, 2012 UT 46, ¶ 195, 299 P.3d 892 (cleaned up).

¶41  We stress that just because statutory language might "be susceptible of multiple meanings," we do not automatically conclude that the language is ambiguous. *Olsen v. Eagle Mountain*

*City*, 2011 UT 10, ¶ 13, 248 P.3d 465. "The mere fact that both sides to a case may offer a conceivable construction of the statutory language is not enough to create an ambiguity." *Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 20, 424 P.3d 22. This is because often "all but one of the meanings is . . . eliminated by context." *Id.* (cleaned up).

¶42   Here, while we agree with Hinton that the district court misinterpreted the statute, we conclude that the context of the language in question eliminates Hinton's proposed interpretation. But the context also eliminates Midwest and the district court's interpretation.

¶43   We begin with the underinsured motorist statute's plain language. Payable, like many words, has multiple definitions. *See Mook v. Bd. of Cnty. Comm'rs of Summit Cnty.*, 457 P.3d 568, 577 (Colo. 2020) (en banc) (noting that "most words have multiple definitions" (cleaned up)). Inquiring into its ordinary meaning can involve reference to "the dictionary as [a] starting point," but that does not end the inquiry. *State v. Hatfield*, 2020 UT 1, ¶ 17, 462 P.3d 330 (cleaned up). We must also look to the context in which the Legislature used the word to understand how the Legislature intended the statute to operate. *Id.*; *see also State v. Lambdin*, 2017 UT 46, ¶¶ 22–23, 424 P.3d 117 (holding that broad language in ordinary meaning of "extreme emotional distress" must be put into context of the statute in which it was used).

¶44   Using statutory context to understand a word's plain meaning is especially important where, as here, "both sides offer conceivable constructions of the language in question." *State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92 (cleaned up). Indeed, Midwest offers us a common dictionary definition of payable— "may, can, or must be paid." Hinton relies on a Black's Law Dictionary definition—"([o]f a sum of money or a negotiable instrument) that is to be paid"—that courts have applied in commercial settings. *See Energy Corp. of Am. v. Mackay Shields L.L.C*, 91 F. App'x 799, 804 (4th Cir. 2003) ("Other federal courts in commercial settings have accepted [Black's Law Dictionary's] meaning of the term 'payable,' *i.e.*, the amount that must be paid at a specified date."); *see also Royal Indem. Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460, 466 (E.D.N.Y. 1996).

¶45   The Legislature did not define the word "payable" in the statute. But we are not entirely without textual guidance. We are at least sure that when the Legislature used the phrase "paid *or payable*," UTAH CODE § 31A-22-305.3(4)(c)(i) (2023) (emphasis

added), it intended to add something to the statute beyond the concept of amounts already paid. Otherwise, payable would simply be a rehash of the word "paid" and would add nothing to the statutory mix.[7]

¶46 But this, admittedly, does not tell us much about what the Legislature meant by benefits that are payable. Indeed, payable could mean amounts that have been "awarded or are owed," but not yet paid, to a claimant in a particular case, as Hinton maintains. Under Hinton's interpretation, benefits are payable under the Workers' Compensation Act, and ineligible to recover as underinsured motorist benefits, if the Labor Commission awards them or orders them to be paid. Payable could also mean, as Midwest asserts, the categories of benefits "available" under the Workers' Compensation Act to every claimant in every case. Or it could mean something else.

¶47 Upon review of the statute's language as a whole, we conclude that payable means something else—specifically, that to be payable, benefits need only be capable of being paid to a claimant in a particular case. Notably, the statute directed that underinsured motorist coverage under "Subsection 31A-22-302(1)(c) provides coverage for a *covered person* who is legally entitled to recover damages from an owner or operator of an underinsured motor vehicle because of bodily injury, sickness, disease, or death." UTAH CODE § 31A-22-305.3(2)(a) (2023) (emphasis added).[8] The statute also indicated that the term "'[c]overed person' has the same meaning as defined in Section 31A-22-305," *id.* § 31A-22-305.3(1)(a), which at the time was, as relevant here, "the named insured," "any person occupying or using a motor vehicle: (i) referred to in the policy; or (ii) owned by a self-insured," and "any person who is entitled to recover damages against the owner or operator of the uninsured or

_____

[7] When we read a statute, we usually try to give independent meaning to each word the Legislature uses, *see State v. Wilkerson*, 2020 UT App 160, ¶ 14, 478 P.3d 1048, because "we presume that the legislature use[s] each word advisedly," *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (cleaned up).

[8] Utah Code section 31A-22-302(1)(c) (2023) listed "underinsured motorist coverage under Section 31A-22-305.3, unless affirmatively waived," as a required component of motor vehicle insurance policies.

underinsured motor vehicle because of bodily injury," *id.* § 31A-22-305(1).

¶48 This tells us that when the statute dictated that underinsured motorist coverage "does not cover any benefit paid or payable under" the workers' compensation statute, *id.* § 31A-22-305.3(4)(c)(i), the Legislature meant any benefits "paid or payable" to the "covered person" under the Workers' Compensation Act. In subsection (4)(c)(i), the Legislature even used the term "covered person." *See id.* Notably, it said underinsured motorist coverage "does not cover any benefit paid or payable," under the Workers' Compensation Act, "except that the *covered person* is credited an amount described in Subsection 34A-2-106(5)."[9] *Id.* (emphasis added). This means that when the district court interpreted payable to mean a categorical bar on categories of damages that might be available as workers' compensation to any claimant in any case, it erred.

¶49 That is, the district court's interpretation did not recognize that what is payable to a particular claimant could shift depending on what is awarded as workers' compensation. The district court held that, as a matter of law, a claimant could never recover past

---

[9] Utah Code section 34A-2-106(5) (2023) included a reimbursement provision. We have previously explained that where

> workers' compensation is accepted, any recovery obtained from the third-party tortfeasor is distributed according to the prioritization established in section 34A-2-106(5). First, the expenses of the action, including attorney fees, are to be paid. Second, the person responsible for compensation payments must be reimbursed for the amount already paid, less the proportionate share of costs and attorney fees. Third, the remaining balance of the third-party recovery is to be paid to the employee's heirs to be applied to reduce or satisfy in full any future obligation accruing against the person liable for compensation payments.

*Anderson v. United Parcel Serv.*, 2004 UT 57, ¶ 9, 96 P.3d 903 (cleaned up). While in *Anderson* we addressed the 1997 version of the statute, the 2023 version in effect when the district court issued its order contained the same language in section 106(5). *Compare* UTAH CODE § 34A-2-106(5) (1997), *with id.* (2023).

medical expenses, future medical expenses, and two-thirds of lost wages because those are categories of damages workers' compensation potentially provides. This is true as far as it goes, but it fails to account for a claimant who has her claims for those categories of damages denied by a workers' compensation insurer. At that point, those damages are no longer "payable" within the statute's meaning, and nothing in the statute prevents a claimant from attempting to recover them from an insurer under an underinsured motorist policy.[10]

¶50 This conclusion is bolstered by the statute's instruction that underinsured motorist coverage "may not be reduced by benefits provided by workers' compensation insurance." *Id.* § 31A-22-305.3(4)(c)(iii). The reference to "benefits provided by workers' compensation" suggests that the Legislature intended for a claimant to have already ascertained what benefits she will receive in workers' compensation before she makes a claim for underinsured motorist benefits. A claimant may not recover those underinsured motorist benefits that are hypothetically available from workers' compensation until she gets a determination allowing her to know for certain what workers' compensation will—and will not—cover. In light of this, we conclude that benefits remain "payable" under the Workers' Compensation Act until a claimant in a particular case finds out otherwise. But once a workers' compensation claim is adjudicated, "payable" means the amounts that have been awarded or are owed, but not yet paid.

¶51 The parties' statutory interpretation arguments do not persuade us otherwise. Aside from her reliance on Utah Code section 31A-22-305.3(4)(c)(iii) (2023), *see supra* II.A., Hinton does not make any other textual arguments to support her interpretation. Under Hinton's interpretation of the statute, claimants could forgo workers' compensation benefits and instead recover exclusively from their underinsured motorist insurer. In Hinton's view, so long as no workers' compensation benefits have been adjudicated, no benefits would be payable under the Workers' Compensation Act, and those benefits would be recoverable from an underinsured

---

[10] There might be other barriers to recovery in any individual case. Res judicata, for example, might in some instances come into play. But nothing in the statute indicates that the Legislature created a system that would prevent a claimant from seeking, under an underinsured motorist policy, damages that workers' compensation had denied her.

motorist insurer. For the reasons discussed above, *see supra* ¶¶ 47–50, that cannot be what the Legislature intended.

¶52   Hinton also argues that in *Neel v. State*, 889 P.2d 922 (Utah 1995), we interpreted similar statutory language—"any benefits which [a] person receives or is entitled to receive," *id.* at 923,—to mean "benefits paid and those that have been awarded but not yet paid." We disagree with Hinton's reading of this precedent.

¶53   In *Neel*, the claimant appealed a district court's determination that the exclusive remedy provision of the workers' compensation statute barred her from seeking personal injury protection (PIP) benefits from her employer, the State. *Id.* At the time, Utah law provided that "[t]he benefits payable to any injured person under [the PIP statute] are reduced by: (a) any benefits which that person receives or is entitled to receive as a result of an accident covered in this code under . . . workers' compensation." *Id.* (quoting UTAH CODE § 31A-22-307 (1994)). We interpreted this provision to mean that "an injured party should be able to receive PIP benefits to the extent that those benefits are not already paid by workers' compensation." *Id.* at 925.

¶54   But we never held that the phrase "is entitled to receive" meant benefits "that have been awarded but not yet paid." *See generally id.* at 925–26. Nor would we have, as the issue before us was not what the term "is entitled to receive" meant but rather was how to resolve "an apparent conflict between Utah's no-fault and workers' compensation statutes." *Id.* at 923. While the PIP statute required "every auto insurance policy—including those held by employers—to include PIP coverage, the [workers' compensation] statute arguably bar[red] injured employees from recovering any benefits from [PIP] coverage." *Id.* And *Neel* was our attempt to reconcile those two statutes. Hinton has accordingly not shown us how the statute's language, or the context in which it appears, supports her interpretation.

¶55   The district court's interpretation—which Midwest adopts and defends on appeal—fares no better. As noted, Midwest claims that because the ordinary meaning of payable is something "that may, can, or must be paid," the only reasonable interpretation is that payable means the type of benefits that are generally available under the workers' compensation statute. (Quoting *Payable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020).) Under this interpretation, a claimant in an underinsured motorist action could not recover benefits available to any claimant in any

case under workers' compensation. Payable, in the view of Midwest and the district court, operates as a categorical ban on damages claimants can recover in underinsured motorist actions, even after the workers' compensation insurer denies a claim for those benefits.

¶56 The bulk of Midwest's argument relies on a dictionary definition of payable that tells us little about what the Legislature meant in this circumstance. Nor does Midwest show us how, if we read payable in the context of the statute as a whole, its interpretation should prevail. Instead, Midwest cites two out-of-jurisdiction cases in which courts have interpreted the word payable to mean any payments that could have been made by a workers' compensation insurer. Neither case helps Midwest's cause.

¶57 In one of these cases, the North Dakota Supreme Court construed "payable" "to mean any workers' compensation benefits [the claimant] would have been paid had [the workers' compensation insurer] not ordered her to forfeit all future benefits in connection with her claim." *See Sandberg v. Am. Fam. Ins.*, 722 N.W.2d 359, 363 (N.D. 2006). The court reached this conclusion because under North Dakota state law, insurers were "given a statutory right to reduce any damages payable to the insured for uninsured motorist coverage by the amount 'paid or payable' *to the insured* under any workers' compensation law." *Id.* (emphasis added). Since the North Dakota Supreme Court tied benefits "payable" to the claimant at issue, we read *Sandberg* to weaken Midwest's interpretation rather than support it. In any event, while the statute at issue in that case contained language like the statute before us, the North Dakota Supreme Court's interpretation of its state law is not the strongest indication of what our Legislature intended when it used the word payable in Utah Code section 31A-22-105.3(4)(c)(i) (2023).

¶58 Midwest's reliance on *Dwight v. Tennessee Farmers Mutual Insurance Co.* is also misplaced. 701 S.W.2d 621 (Tenn. Ct. App. 1985). There, the Tennessee Court of Appeals held that an uninsured motorist insurer could apply the workers' compensation offset provision in its policy to limit its liability to the plaintiff. *See id.* at 621–22. The court noted that "'[p]ayable' [was] defined as that must or may be paid" and that "[t]he record establishe[d] the benefits were available to the plaintiff and, for whatever reason, she elected not to take them." *Id.* at 622 (cleaned up). The court

concluded that this meant the plaintiff waived workers' compensation benefits and held that her "waiver . . . [could] not operate to increase the contractual obligations of the insurer." *Id.* This case is helpful to Midwest only to the extent that the court applied the ordinary meaning of payable. The court, notably, did not explain why it preferred that definition, and it failed to acknowledge that payable has other definitions. *See generally id.* At bottom, *Dwight* similarly does not help us determine what the Legislature intended Utah's underinsured motorist statute to mean.

¶59 We find no textual support for Hinton's and Midwest's/the district court's interpretations. For the reasons discussed above, the Legislature intended for benefits payable to mean benefits that can or may be paid, or are capable of being paid, to a claimant in a particular case. And what is capable of being paid in a particular case might shift after the claimant has the universe of her workers' compensation benefits determined.

 *C. The Underinsured Motorist Statute's Legislative History and the Policies Underlying the Underinsured Motorist and Workers' Compensation Statutory Schemes Support a Reading of the Statute that Interprets Payable to Mean Benefits that Can or May Be Paid to a Claimant in a Particular Case*

¶60 Hinton faults the district court for not turning to legislative history and the statute's purposes to discern the statute's meaning.[11] We need not refer to extraneous sources of meaning

---

[11] Specifically, Hinton argues that the district court erred when it failed to consider legislative history to resolve what she claims are "the inherent ambiguities in 4(c)(i)" and when it interpreted the statute without considering the policy reasons underlying it. But Hinton does not point us to—nor can we recall—any case in which we have held that failure to look at secondary sources when interpreting statutes is per se error. In fact, we have at times been suspicious of these sources when we interpret statutes, *see, e.g.*, *Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶¶ 67–68, 345 P.3d 619, although we can find meaning in them in certain cases, *see, e.g.*, *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994) (relying on "relevant legislative history and policy considerations" to interpret a statute when its plain

(continued . . .)

when a statute is plain. *See Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶¶ 54–57, 67, 345 P.3d 619. Here, although we can discern the meaning of payable from the statute itself and need not consult those sources, a review of the statute's legislative history and other accepted sources suggests our interpretation is correct.

¶61   The relevant language in the version of the underinsured motorist statute at issue results from the Legislature's amendment of the statute in 2018. At that time, the Legislature removed language directing that underinsured motorist coverage was "secondary to the benefits provided by Title 34A, Chapter 2, Workers' Compensation Act," UTAH CODE § 31A-22-305.3(4)(c)(i) (2016), and replaced it with the following language: "Underinsured motorist coverage . . . does not cover any benefit paid or payable under Title 34A, Chapter 2, Workers' Compensation Act," *id.* § 31A-22-305.3(4)(c)(i) (2023); *see also* Uninsured and Underinsured Motorist Coverage Amendments, S.B. 190, 2018 Leg., Gen. Sess. (Utah 2018). As the Utah House and Senate floor debates on the amendment reveal, these changes were driven by our decision in *Rutherford*, 2017 UT 25.

¶62  In that case, Rutherford argued that Utah's workers' compensation and underinsured motorist statutes allowed him to recover from both his workers' compensation and underinsured motorist insurers. *Id.* ¶ 6. The underinsured motorist insurer asserted that the use of "secondary" in Utah Code section 31A-22-305.3(4)(c)(i) (2016) "mean[t] it should be able to offset its potential liability by any payments Mr. Rutherford ha[d] received from his workers' compensation policy." *Id.* We concluded that the word "'secondary' in section 305.3(4)(c)(i) mean[t] that [underinsured motorist] coverage applies only after the workers' compensation benefits have been *exhausted*." *Id.* ¶ 8 (emphasis added). In other words, we held that the statute expressly required undercompensated claimants injured on the job to recover in full from workers' compensation before claiming for underinsured motorist benefits. *See id.*

¶63  In February 2018, Senator Curtis Bramble introduced the pertinent amendment and stated that it would address our holding

---

language did "not resolve all . . . claims" before us). We emphasize that we generally resort to non-textual sources of meaning when the text, and textual tools of interpretation, have failed to yield an answer.

in *Rutherford* that a claimant could not recover underinsured motorist benefits if workers' compensation benefits remained available or unexhausted. *See* Utah Senate Floor Debates, S.B. 190, 2018 Leg., Gen. Sess. (Feb. 26, 2018) (available at https://le.utah.gov/av/floorArchive.jsp?markerID=103263). Senator Bramble explained that there are at least some scenarios in which workers' compensation will never be exhausted. *See* Utah Senate Floor Debates, S.B. 190, 2018 Leg., Gen. Sess. (Feb. 27, 2018) (available at https://le.utah.gov/av/floorArchive.jsp?marker ID=103469). In cases of permanent disability, for example, workers' compensation benefits may never be exhausted. *See id.*

¶64 Driving the amendment, then, was a concern that in at least some situations, an undercompensated claimant injured within the course and scope of their employment would not be able to access underinsured motorist benefits. *See id.*; *see also* Utah House Floor Debates, S.B. 190, 2018 Leg., Gen. Sess. (Mar. 7, 2018) (available at https://le.utah.gov/av/floorArchive.jsp?markerID= 104274). Another purpose of the amendment, according to Senator Bramble, was to ensure that a claimant could not recover for the same loss from both workers' compensation and underinsured motorist coverage providers; in other words, a claimant could not "double recover." *See* Utah Senate Floor Debates, S.B. 190, 2018 Leg., Gen. Sess. (Feb. 26, 2018) (available at https://le.utah.gov /av/floorArchive.jsp?markerID=103263).

¶65 Although we persist in our concern about reading legislative history as the definitive word on a statute's meaning, *see Graves*, 2015 UT 28, ¶ 67, we can take a lesson from the bill sponsor's representation about what the amendment was meant to do. That is, it appears that the Legislature enacted the amendment to clarify two things: (1) that double recovery was prohibited and (2) that a claimant need not exhaust workers' compensation before filing a claim for underinsured motorist benefits.

¶66 This conclusion is further bolstered by what we know happened in 2024. The Legislature again amended the relevant statutory language. *See* Motor Vehicle Insurance Modifications, H.B. 231, 2024 Leg., Gen. Sess. (Utah 2024). As of July 1, 2024, Utah Code section 31A-22-305.3(4)(c)(i) states that

> (c) Underinsured motorist coverage:
>
> (i) in order to avoid double recovery, does not cover any benefit under Title 34A, Chapter 2, Workers' Compensation Act, . . . *provided by* the

workers' compensation insurance carrier, uninsured employer, the Uninsured Employers' Fund created in Section 34A-2-704, or the Employers' Reinsurance Fund created in Section 34A-2-702, except that:

(A) the covered person is credited an amount described in Subsection 34A-2-106(5); and

(B) the benefits described in this Subsection (4)(c)(i) do not need to be paid before an underinsured motorist claim may be pursued and resolved.

(emphasis added).

¶67 "Later versions of a statute do not necessarily reveal the intent behind an earlier version." *Visitor Info. Ctr. Auth. of Grand Cnty. v. Customer Serv. Div., Utah State Tax Comm'n*, 930 P.2d 1196, 1198 (Utah 1997). "Ordinarily, the presumption is that an amendment is intended to change existing legal rights," but an "exception to this presumption exists when the amendment was intended to clarify a preexisting intention." *Id.* (cleaned up). Like the 2018 amendment, this amendment appears to have been offered to "clarif[y] that certain benefits related to the Utah Labor Commission do not need to be exhausted before uninsured or underinsured motorist coverage can be paid." H.B. 231. Representative Nelson Abbott explained when he introduced the amendment that it would ensure no double recovery and allow a claimant to get underinsured motorist benefits even while they were receiving workers' compensation benefits. *See* Utah House Floor Debates, H.B. 231, 2024 Leg., Gen. Sess. (Feb. 13, 2024) (available at https://le.utah.gov/av/floorArchive.jsp?markerID=125860). Senator Bramble similarly noted that the amendment would clarify that certain workers' compensation benefits need not be exhausted before a claimant can receive underinsured motorist benefits. *See* Utah Senate Floor Debates, H.B. 231, 2024 Leg., Gen. Sess. (Mar. 1, 2024) (available at https://le.utah.gov/av/floorArchive.jsp?markerID=128005).

¶68 Effective July 2024, the Legislature removed the term "paid or payable" in Utah Code section 31A-22-305.3(4)(c)(i) (2023) and replaced it with the term "provided by." *See* UTAH CODE § 31A-22-305.3(4)(c)(i); *see also* H.B. 231. The word "provided" is the past participle of "provide," which means "to supply or make available (something wanted or needed)" and "to make something available to." *Provide*, MERRIAM-WEBSTER, https://www.merriam

-webster.com/dictionary/provide (last visited Mar. 12, 2025); *see also Provide*, CAMBRIDGE DICTIONARY, https://dictionary.cambr idge.org/us/dictionary/english/provide (last visited Mar. 12, 2025) (defining "provide" as "to give someone something that they need"); *Provide*, DICTIONARY.COM, https://www.dictionary.com /browse/provide (last visited Mar. 12, 2025) (defining "provide" as "to make available; furnish" and "to supply or equip").

¶69   By directing that underinsured motorist coverage does not cover any benefit under "Title 34A, Chapter 2, Workers' Compensation Act provided by" insurers or funds, UTAH CODE section 31A-22-305.3(4)(c)(i) intends for payable to mean benefits that need only be capable of being paid. But what workers' compensation will provide to a claimant must be ascertained before benefits can be claimed as underinsured motorist benefits.

¶70 Finally, Hinton asserts that the district court's interpretation of the statute runs contrary to the purposes of Utah's underinsured motorist and workers' compensation schemes.

¶71   Utah's workers' compensation system aims to provide speedy compensation to workers injured or sick within the course and scope of their employment. *See EMPLOYERS' GUIDE TO WORKERS' COMPENSATION*, 5 (2016–2017), https://laborcommission.utah.gov /wp-content/uploads/2019/11/Employers-Guide-Workers-Comp-Art.pdf [hereinafter *EMPLOYERS' GUIDE TO WORKERS' COMPENSATION*].  "Workers' compensation is a no-fault insurance system," meaning that benefits are available to claimants regardless of who caused the injury or illness. *Id.* This generally makes workers' compensation benefits easier to obtain than underinsured motorist benefits. Although to receive benefits claimants are required to show that an injury or illness occurred "in the course of or because of or arising out of the [claimant's] employment," UTAH CODE § 34A-2-105(1), the Legislature set up the workers' compensation system to save employers and employees uncertainty and expense, *see EMPLOYERS' GUIDE TO WORKERS' COMPENSATION* at 5; *see also Shattuck-Owen v. Snowbird Corp.*, 2000 UT 94, ¶ 19, 16 P.3d 555 (explaining that Utah's "workers' compensation system constitutes a quid pro quo between employers and employees" where "employees are able to recover for job-related injuries without showing fault and employers are protected from tort suits by employees" (cleaned up)). After all, the system is supposed to be "a simple, adequate, and speedy means of securing compensation for injuries suffered"

on the job. *Anderson v. United Parcel Serv.*, 2004 UT 57, ¶ 8, 96 P.3d 903 (cleaned up).

¶72 Underinsured motorist coverage, by contrast, "provide[s] a source of indemnification for accident victims when the tortfeasor does not have adequate coverage." *State Farm Mut. Auto. Ins. v. Green*, 2003 UT 48, ¶ 31, 89 P.3d 97. The purpose of this coverage is "to put a driver who is injured by an underinsured motorist in the same position as if the underinsured motorist had liability limits in amounts equal to the insured's coverage." *Sunahara v. State Farm Mut. Auto. Ins.*, 280 P.3d 649, 657 (Colo. 2012) (en banc).

¶73 Underinsured motorist coverage is "excess coverage": "an agreement to indemnify against any loss that exceeds the amount of coverage under another policy." *Rutherford*, 2017 UT 25, ¶ 8 (cleaned up); *see also U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993) ("[Underinsured motorist coverage's] purpose is to provide insurance protection to the insured against damages caused by a negligent motorist as if the motorist had another liability policy in the amount of the underinsured policy."). And even though in the 2018 amendment, the Legislature removed the language that said underinsured motorist coverage is "secondary to the benefits provided by" workers' compensation, UTAH CODE § 31A-22-305.3(4)(c)(i) (2016), nothing from the statute's legislative history indicates an intent to disclaim the fact that underinsured motorist insurance is secondary coverage by nature, *cf. State v. Felts*, 2024 UT 41, ¶¶ 26–28, 560 P.3d 787 (explaining that "[w]hile we sometimes infer meaning from the removal of statutory language," other times the Legislature appears to have removed language "merely for clarity and consistency" (cleaned up)).

¶74 When we read the statutory language with these rationales in mind, we do not think the Legislature intended to create a statutory scheme that allows claimants to bypass the system the Legislature set up to save claimants resources and uncertainty and allow them to instead seek recovery under a system in which there is elevated uncertainty and under which they might need to establish fault to obtain benefits. Nor would the Legislature likely have condoned the practice of forfeiting workers' compensation, arguing that those benefits are too speculative and not "payable," to maximize recovery from an excess carrier. At least, we would expect to see some textual signal in the statute if that is what the Legislature intended.

¶75 We also decline Midwest's invitation to interpret the statute in a way that categorically bars an underinsured claimant's recovery. Under Midwest and the district court's interpretation, categories of benefits available under the Workers' Compensation Act—even if the insurer makes clear that it will not provide those benefits to a particular claimant—can never be available in underinsured motorist actions. And, in some circumstances, claimants could lose coverage for underinsured motorist benefits where the amount they receive in workers' compensation is less than what they needed to make themselves whole. If Midwest and the district court's interpretation were correct, underinsured motorist coverage, in many cases, would be illusory. We are not convinced that, given the rationale behind Utah's underinsured motorist scheme and the absence of a clear textual indication, the Legislature would have enacted a framework that would render underinsured motorist coverage hollow in some circumstances.

¶76 The better reading of the statute, in light of what motivates the statutory schemes, is that by excluding benefits that are "paid or payable," the Legislature intended that a claimant who wants to seek the type of benefits workers' compensation provides attempt to recover from workers' compensation before claiming underinsured motorist benefits. Only once a claimant ascertains how much they will receive in workers' compensation may they then attempt recovery of those types of benefits from their underinsured motorist insurer. Otherwise, all benefits that workers' compensation might theoretically pay remain "payable" and unavailable under the underinsured motorist policy.

¶77 Even though we do not adopt Hinton's interpretation of the statute, we agree with her that the district court misinterpreted the statute. For this reason, we vacate the district court's order and send the matter back to the district court to determine what benefits remain "payable" to Hinton. Based on the record before us, it appears that this will require the district court to ascertain whether Hinton still has the ability to press her workers' compensation claim, and, if not, whether Midwest has any defenses based upon how that workers' compensation proceeding terminated. The district court is free on remand to address any other arguments necessary to resolve the matter.

## CONCLUSION

¶78 Contrary to Hinton's assertion, the district court had jurisdiction to determine what workers' compensation benefits

were "payable" to Hinton. The district court erred when it interpreted "payable" to mean all categories of damages that workers' compensation has the statutory ability to cover, even if workers' compensation has determined that it will not provide those damages to a particular claimant. We therefore vacate the court's order and remand the matter for the court to determine what benefits remain "payable" to Hinton under the Workers' Compensation Act.

––––––––––––